cover up, and provide the appearance of legitimacy to their scheme to loot and defraud the Griggs & Brown Companies.

339. The acts set forth above constitute chargeable offenses pursuant to R.I.G.L. 1956 § 11-42-2 (relating to extortion.)

340. By engaging in the activities described above, including but not limited to transferring, wasting, and appropriating the assets and income of the Griggs & Browne Corporations for their own benefit, the Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(b) and (c).

341. Each of the Individual Defendants named in paragraph 417 have associated with the business and participated directly or indirectly in the conduct of Griggs & Browne's affairs through a pattern of racketeering activity.

342. Plaintiffs are persons who have been injured in their business opportunities and property by reason of this conduct as defined by 18 U.S.C. § 1961(3).

**(Predicate Acts - Violation of The Hobbs Act)**

343. Paragraphs 168 and 169 (relating to threats against Michael by Brayton and Carol in about 1999), 167-175 and 176 (relating to threats against Michael by Heal, Brayton and others at the direction of "a lawyer") in 1999), 182-187 (relating to threats against Michael in December, 2004 by Heal and Gerstein) and 207 (relating to extortionate conduct by Deborah toward Monica in December, 2002), are restated and incorporated herein, by reference.

344. Under the provisions of 18 U.S.C. 1951 (commonly referred to as the "Hobbs Act"), "**(w)hoever in any way or degree obstructs, delays, or affects commerce, or the movement of any article or commodity in commerce, by robbery or extortion (e.g.**

**obtaining the property of another, with his consent, induced by actual or threatened force, violence, or fear, or under color of official right) or attempts or conspires to do so…., violates the Hobbs Act."**

345. In each of the claims described with particularity above, as well on numerous other occasions, the defendants Carol, Heal, Dan, Deborah, Gerstein and others known and unknown to Plaintiffs, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by extortion involving the Griggs & Browne companies under color of official right and/or conspired to do so.

346. The Individual Defendants intentionally and willfully secreted Glenn, isolated him from plaintiffs (his children), his trusted advisors and friends, and any other persons who threatened the ability of Carol and others to exert undue influence over him, extorted compliance with their demands from Plaintiffs under threat of both non-existent court orders and those obtained ex-parte through misrepresentation and distortion, and thereby took control of the Griggs & Browne companies, ignored or abetted Carol in stealing money and property and looted money (including legal fees) in furtherance of their schemes from the Griggs & Browne corporations, depleting its assets and retarding its potential growth under color of official right.

347. Upon information and belief, some of the individual defendants continue to extract money, property and pretensive or false legal fees unlawfully under color of official right from some or all of the Griggs & Browne corporations in ongoing violation of the Hobbs Act.

348. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1351 (relating to extortion.)

349. By engaging in the activities described above, including but not limited to extorting the plaintiffs, transferring, wasting, and appropriating the assets and income of the

Griggs & Browne corporations for their own benefit, the individual defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962 (b) and (c).

350. Each and all of the individual defendants have directly, indirectly and/or through false pretenses associated with the business and participated directly or indirectly in the conduct of Griggs & Brown's affairs through a pattern of racketeering activity

351. Plaintiffs are persons who have been injured in their business and property by reason of this conduct as defined by 18 U.S.C. § 1961(3).

**(Predicate Acts - Mail Fraud)**

352. **Pursuant to the provisions of 18 U.S.C. § 1341 "(w)hoever, having devised a scheme to defraud or obtain property by fraudulent pretenses uses the mail for the purpose of executing that scheme, or attempts to do so, commits mail fraud."**

353. In each of the claims described with particularity above, as well on numerous other occasions, defendants Carol, Heal, Dan, Deborah, Gerstein and others known and unknown to plaintiffs, caused to be prepared and mailed false, fraudulent, and/or misleading documents to plaintiffs, to financial institutions, to one or more of the Griggs & Browne companies, to persons appointed to evaluate and care for Glenn, and others in furtherance of the individual defendants' corrupt scheme to defraud and the individual defendants have relied on one or more mailings to demand/receive payments for services rendered under false pretenses of in furtherance of racketeering activity on divers dates currently unknown to plaintiffs that have occurred and continued from 1999 to the present.

354. Among other things, on numerous occasions (the exact dates, place and

content of which are unknown to Plaintiffs due to the secrecy achieved by the Individual defendants and Plaintiffs' lack of appropriate standing prior to their father's death) the individual defendants routinely siphoned monies from Griggs & Browne and checks in payment for services rendered in furtherance of their scheme were delivered through the United States Mail and/or other courier services within the meaning of the mail fraud act.

355. Upon information and belief, prior to 2007 all annual reports of the three Griggs & Browne businesses described in paragraphs 17-20 were sent to the Rhode Island Secretary of State through the United States mails.

356. The annual reports for the years 1999 through 2007 were and constitute part of an ongoing racketeering effort to maintain control of these companies

357. The annual reports of such companies during the years 1999 through 2007 comprise several separate violations of 18 U.S.C.§ 1341 as the use of the mails to file these reports were for the purpose of exercising a scheme to obtain control of the Griggs & Browne companies.

358. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (relating to mail fraud).

359. By engaging in the activities described above, including but not limited to transferring, wasting, and appropriating the assets and income of the Griggs & Browne Companies and/or Glenn's personal funds for their own benefit, the individual defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

**(Predicate Acts - Wire Fraud)**

**360. Pursuant to the provisions of 18 U.S.C. § 1343, "(w)hoever, having devised a**

**scheme to defraud or obtain property by fraudulent pretenses transmits via wire, radio, or television a communication for the purpose of executing that scheme, commits wire fraud.**

361. In each of the claims described with particularity above, as well on numerous other occasions (the exact dates, places and content of which are unknown to Plaintiffs due to the secrecy achieved by the Individual defendants and Plaintiffs lack of appropriate standing prior to their father's death), the individual defendants Carol, Heal, Dan, Deborah, Gerstein and/or others presently unknown to plaintiffs, transmitted or caused to be transmitted false, fraudulent, and/or misleading communications to one or more of the Griggs & Browne companies, one or more Griggs & Browne employees, to financial institutions, to attorneys, to persons hired or appointed to evaluate and assist Glenn, to governmental agencies, and to some or all of the plaintiffs in furtherance of the individual defendants' corrupt scheme to defraud plaintiffs and the individual defendants have relied on one or more such communications in furtherance of the undue influence and/or mental incapacity of Glenn continuously from 1999 to December, 2007 and (upon information and belief) continuing to the present.

362. Among other things, fraudulent transactions were completed routinely in which the individual defendants unlawfully diverted monies from Griggs & Browne and made material misrepresentations as to Glenn's condition repeatedly during the period from 1999 to December, 2008, utilizing telephone and/or email communications to accomplish their illicit objectives.

363. Page three (3) of Exhibit "A" (a statement by Deborah) recounts that a real estate agent in St. Martin called her, advising that the realtor had been called (by telephone) by someone claiming to be Glenn Griggs and that this caller indicated that he wanted to "sell" a condominium in St. Martin owned by Glenn. Deborah claims that the realtor immediately knew that this call was an impersonation since the realtor was aware that Glenn was not able to talk.

364. Page three (3) of Exhibit "A" also indicates that after hearing from the realtor in St. Martin, Deborah called Carol and Carol "told me that she had Matt Tierney (a Griggs & Browne employee) call St. Martin impersonating (Glenn)" , adding that "Carol said she did this because (Glenn) needed the money which is obviously a complete lie".

365. The aforementioned telephone call to St. Martin occurred at a time prior to March 2, 2005 (the date of Exhibit "A") but plaintiffs are unaware of the exact time it was made. Nevertheless, it is a violation of 18 U.S.C. § 1343 and another example of the scheme to steal Glenn's business and personal wealth.

366. Annual reports of the four (4) Griggs & Browne companies described in paragraphs 17, 18, 19 and 20 were individually and separately electronically filed with the Secretary of State on or about March 29, 2008.

367. The electronically filed annual reports were and constitute an ongoing racketeering effort to maintain control of these companies

368. The electronically filed annual reports comprise three (3) separate violations of 18 U.S.C.§ 1343 and actions such as this will continue unless restrained and enjoined by this court..

369. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1343 (relating to wire fraud).

370. By engaging in the activities described above, including but not limited to transferring, wasting, and appropriating the assets and income of Glenn and/or the Griggs & Browne Companies for their own benefit, the individual defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(b) and (c).

371. Each of the individual defendants named in the Complaint have associated with the businesses and participated directly or indirectly in the conduct of Griggs & Brown's affairs through a pattern of racketeering activity.

372. Plaintiffs are persons who have been injured in their business opportunities, estates and property by reason of this conduct as defined by 18 U.S.C. § 1961(3).

373. By virtue of the Defendants violations of 18 U.S.C. § 1962(b) and (c), Plaintiffs are entitled to recover from each of the Defendants three (3) times the damages sustained by reason of the frauds, thefts, unlawful conversions and misappropriations committed by the individual defendants and others acting in concert with them, with interest, the costs of suit, and reasonable attorney fees.

**COUNT II**

[VIOLATION OF 18 U.S.C. § 1962(b) R.I.C.O.]

374. Plaintiffs restate and incorporate, by reference, paragraphs 59-74, 78-84, 85-92 (relating to the ouster of contact with "wall of fame" member Aubin), 85-92 (concerning the replacement of corporate counsel), 115-127 (about the knowledge and treatment of accountant Vinci), 148-190 (pertaining to Michael Griggs), 256, and 304-311 (concerning legal fees) of the Complaint as if fully set forth herein.

375. Defendants engaged in the previously described predicate crimes in order to directly or indirectly acquire and obtain an interest or control over some or all of the Griggs and Browne Companies.

376. Defendants fraudulently acquired and obtained an interest in and/ or control of some or all of the Griggs & Browne companies through a pattern of racketeering activity.

377. In February, 1996, 1997 and 1998, the annual reports of the Griggs & Browne Co., Inc. as filed with the Rhode Island Secretary of State company list Glenn, Michael and Dan as the Directors and officers with Brayton holding the position of Secretary.

378. Upon information and belief, an annual meeting of that corporation took place in February, 1999, at which time Heal was added as a Director due to the conspiratorial effort initiated by Carol to gain control of the business. Heal's addition is noted in the annual report of March 1 or March 2, 1999.

379. Upon information and belief, on or about July 1, 2001, the Statement of Change of Registered agent form referenced in paragraph 126 of this complaint was signed by or for Glenn and notarized by an employee ("Claudette") on instructions from Carol at a time when Glenn was unable to knowingly understand what he was signing.

380. Upon information and belief, a further meeting took place in about February, 2000, at which time Carol and Brayton became directors (with Glenn) and both Dan and Michael were no longer officers or directors. This was reflected in the annual report dated February 22, 2000, and by this time Carol was firmly in actual control of the business, aided by Heal and Brayton.

381. Upon information and belief, another meeting occurred in February, 2001, following which an annual report was filed on or about February 20, 2001, with no changes from 2000 and the conspiracy and racketeering activity in full effect.

382. Upon information and belief, another meeting occurred in January, 2002, with identical results as those in the year 2001. This is reflected in the annual report of the business dated January 23, 2002.

383. Upon information and belief, another meeting occurred in February, 2003, with Heal being added as Vice President and no other changes from the array of persons listed in the 2002 annual report. This is demonstrated by the 2003 annual report filed in February, 2003.

384. Upon information and belief, Glenn's signatures appeared on the annual reports from 2000 through February, 2003, as part of the plan to make it appear that he was competent, running the businesses, and not under undue influence, thereby thwarting efforts of family members to aid him and furthering the scheme to gain control of the Griggs & Browne businesses.

385. Following the July, 2003 events wherein Dan and Heal became guardians for Glenn, the racketeering conspirators could no longer convincingly have Glenn sign reports.

386. Upon information and belief, in July, 2004 another meeting took place and this resulted in the decision to proclaim Dan as "President " and "Treasurer" of the corporation with Glenn remaining as a titular Director. Carol and Brayton continued as directors and Heal and Brayton were also officers. This was evidenced by an annual report signed by Dan on or about July 19, 2004.

387. Upon information and belief, Dan was made an officer of the company to assure his allegiance to the other Individual defendants.

388. Upon information and belief, another meeting took place at some time in early March, 2005, at which time the same officers and directors were allegedly selected as in 2004. This was reflected in the annual report signed by Dan on or about March 17, 2005.

389. Upon information and belief, another meeting of some or all of the racketeering individual defendants took place in early February, 2006, with the same officers and directors

allegedly selected as in the previous two (2) years. Dan once again signed an annual report, this time on or about February, 17, 2006.

390. In March, 2007, the racketeering individual conspirators changed the registered agent again as is reflected in a Statement of Change of Registered Agent signed by Heal on or about March 21, 2007. At this point in time plaintiffs believe Carol had "retired" with inappropriate benefits currently not known to plaintiffs.

391. Upon information and belief, another meeting took place in early 2007, at which time Dan replaced Brayton as Secretary, Paul Brunetti ("Brunetti") Dan and Heal were selected as Directors, while Glenn, Carol and Brayton were removed as Directors. This is reflected in the annual report signed by Heal and received by the Secretary of State of Rhode Island on March 20, 2007.

392. Upon information and belief, another meeting took place in March, 2008, following Glenn's death. This resulted in the purported reelection of the same officers and directors as the previous year. An annual report was electronically filed with the Secretary of State on March 29, 2008.

393. Upon information and belief, prior to 2007 all annual reports were sent to the Secretary of State through the United States mails.

394. The Griggs & Browne companies (or some of them) constitute an enterprise that is engaged in, and the activities of which, affect interstate commerce.

395. The Individual Defendants, Carol, Heal, Dan, Brayton, and Debbie have derived and continue to derive fraudulently obtained income directly or indirectly from the pattern of racketeering activity as alleged with particularity above and have acquired interest and/or control in the operation of the enterprise directly, utilizing undue influence, and/or through "the Trust."

396. The Plaintiffs are persons as defined by 18 U.S.C. § 1962(3) who have been injured in their business opportunities, estates or property by reason of the individual defendants' conduct as alleged above.

397. By virtue of the individual defendants violations of 18 U.S.C. § 1962(b), Plaintiffs are entitled to recover from each of the individual defendants three (3) times the damages sustained by reason of the frauds, thefts, unlawful conversions and misappropriations committed by the individual defendants and others acting in concert with them, with interest, their costs of suit, and reasonable attorney fees.

**COUNT III**

(VIOLATION OF 18 U.S.C. § 1962(d)(R.I.C.O. Conspiracy))

398. Plaintiffs restate and incorporate, by reference, the allegations of Counts I and II of the Complaint as if fully stated herein.

399. The individual defendants combined, conspired and confederated with one another to violate 18 U.S.C. § 1962 (b) and (c) and thereby violated 18 U.S.C. § 1962(d).

400. As a result of this conspiracy, the Plaintiffs have been injured in their business opportunities, estates and property.

401. By virtue of the individual defendants violations of 18 U.S.C. § 1962(d), plaintiffs are entitled to recover from each of the individual defendants three (3) times the damages sustained by reason of the frauds, thefts, unlawful conversions and misappropriations committed by the Individual defendants and others acting in concert with them, with their costs of suit, interest and reasonable attorney fees.

**COUNT IV**
VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT
(18 U.S.C. § 2510 et seq.)

402. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 217-219, 262-263, 267-268 and 292-294 of the Complaint as if fully set forth herein.

403. Pursuant to the provisions of the Electronic Communications Privacy Act, 18 U.S.C. 2520, et seq. ("the Privacy Act"), **"any person who – intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be fined under this title or imprisoned not more than five years, or both."**

404. On numerous occasions during the period from 2000 to and including October, 2007, some or all of the plaintiffs visited Glenn at the fortress and, during several such visits, had private moments with their father (with no other persons present in his room or within the house) during which they expressed their personal thoughts, love, affection and wishes to each other and to their father while located or positioned in his bedroom.

405. On more than one such occasion they were subsequently directly of indirectly contacted by Attorney St. Pierre and/or others who discussed what had occurred during their visits in significant detail and issued warnings against them talking of certain things and even taking pictures of their father.

406. At no time did any of the plaintiffs consent to having their visits and the discussions described above tape recorded or intercepted by any other person.

407. At the times described above, Glenn was unable to speak in much more than monosyllables and was suffering from cognitive defects or deficits that caused him to have two appointed guardians.

408. During the year 2007, Sally Mello ("Ms. Mello"), a home health aid for Glenn observed what appeared to be video cameras or camcorders not only over the sliding doors of Glenn's bedroom but also at the foot of Glenn's bed, concealed over a television.

409. Ms. Mello did not consent to being observed or recorded while on duty and has no knowledge that Lauren, Monica or Michael had any knowledge of the device over the television during their visits with Glenn .

410. Plaintiffs observed the video camera above the sliding doors leading to Glenn's room, but never saw the "foot of the bed" device.

411. The housekeepers at the fortress had a separate bedroom in which there was a television that gave a view of Glenn from the aspect of the foot of his bed. There was no known view from the camera above the sliding glass doorway.

412. The aforementioned actions taken by Carol while Glenn was hospitalized and had been diagnosed with a terminal illness were akin to a criminal wiping away fingerprints after a crime and constitute and comprise the spoliation of evidence; accordingly an adverse inference should be drawn against Carol and/or any other person having counseled or assisted her in taking such actions.

413. Upon information and belief, the recording devices in question were intentionally and knowingly used to improperly intercept wire and/or oral communications designed and installed by or at the direction of Carol and/or another person or person to monitor Glenn's visits with family members without regard that this might violate the rights of Plaintiffs.

414. Upon information and belief, the use of recording devices to violate the rights of others was known or should have been known to most or all of the individual defendants, but they individually and collectively took no action to prohibit their use.

415. The individual defendants were not, at any relevant time or with respect to the eavesdropping or interception of communications described in this count, acting under color of law.

416. Carol and any other individual defendants' intentional, reckless, wanton or malicious interception, disclosure and/or use of plaintiffs' communication(s), as aforesaid, was and is in violation of 18 U.S.C. 2510, et. seq.

417. Plaintiffs are accordingly entitled to maintain a civil action against Carol and any involved Individual Defendants for equitable or declaratory relief, actual and punitive damages, costs and a reasonable attorney fee in accordance with 18 U.S.C. 2520 (a)-(c).

**COUNT V**
(Conspiracy to violate 18 U.S.C.§ 2510)

418. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 217-219, 262-263, 267-268, 292-294 and Count IV of the Complaint as if fully set forth herein.

419. Carol and each or all of the Individual Defendants (the exact identities of whom are currently unknown to Plaintiffs) have combined, conspired and confederated to accomplish an unlawful end and to achieve such ends by violating the provisions of 18 U.S.C. 2510 et seq.

420. Plaintiffs are accordingly entitled to maintain a civil action against each or all of the Individual defendants for actual and punitive damages, plus interest, costs and reasonable attorney fees.

**COUNT VI**
(Rhode Island R.I.C.O. Violations)

421. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 45-73, 103-114, 167-180, 185-190, 207, 256, 271-274, 280-286, 296-303, and 304-311 of the Complaint as if fully set forth herein.

422. The individual defendants wrongfully engaged in the following pattern of "racketeering activity" as defined in R.I.G.L. §7-15-1(c), including, but not limited to, larceny.

423. The Defendants Carol, Heal, Dan, Deborah, Gerstein, and others presently unknown to Plaintiffs wrongfully appropriated monies from Glenn and/or some or all of the Griggs & Browne companies through a "racketeering activity" (or activities) as defined in R.I.G.L. §7-15-1(c), including, but not limited to larceny, fraud, embezzlement and/or unlawful appropriation.

424. Larceny is one of the "predicate acts" described in RICO in R.I.G.L. §7-15-1.

425. The Defendants acted together and as an "enterprise" as defined in R.I.G.L. §7-15-1(a).

426. The individual defendants are "persons" as defined in R.I.G.L. §7-15-1 of the Rhode Island state RICO statute.

427. The Griggs & Browne companies constitute an "enterprise" as defined in R.I.G.L. §7-15-1.

428. Defendants Carol, Heal, Dan, Deborah, Gerstein and others not presently known to Plaintiffs knowingly received income from the aforementioned racketeering activities, and directly or indirectly used and/or invested that income (or a part thereof) in the establishment, conduct and/or operation of an enterprise consisting of their own personal affairs, as prohibited by R.I.G.L. §7-15-2.

429. The individual named Defendants knowingly received income from the aforementioned racketeering activities, and directly or indirectly used and/or invested that income (or a part thereof) in the establishment, conduct and/or operation of an enterprise, including "the Trust," as prohibited by R.I.G.L. §7-15-2.

430. Plaintiffs have been damaged by the actions of such individual defendants and are accordingly entitled to compensatory and exemplary damages, plus interest, costs, reasonable attorney fees and such further relief as may be appropriate in the circumstances.

**COUNT VII**
(VIOLATION OF RIGHT TO PRIVACY – RHODE ISLAND LAW)

431. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 217-219, 221-222, 224-225, 232, 234, 239, 245, 247-250, 262-263, 267-268 and 292-294 of the Complaint as if fully set forth herein.

432. Pursuant to R.I.G.L. § 9-1-28.1 (a), at all times that Plaintiffs visited with their father they had the right to be secure from unreasonable intrusion upon their physical solitude and seclusion.

433. Plaintiffs' meetings with their father at which they were led to believe that they were alone with him were recorded and/or were the subject of eavesdropping, despite their reasonable expectations that they would be and were entitled to privacy.

434. The aforementioned invasions of Plaintiffs' privacy rights were offensive and/or objectionable to any reasonable person.

435. The aforementioned invasions of Plaintiffs' privacy rights were disclosed by those who caused or participated in such invasions to other persons for the purpose of personal gain, vendettas, and/or to prevent the possibility of releasing Glenn from his undue influence, although under this section of Rhode Island law the person who discloses the information need not profit by the disclosure.

436. Carol, Gerstein, Deborah, Bicki and any other Individual Defendants who

participated in the violation of Plaintiffs' privacy rights as described herein are liable to plaintiffs for compensatory damages, plus interest, costs, and reasonable attorney fees under R.I.G.L. § 9-1-28.1 (b).

**COUNT VIII**
(VIOLATION OF RIGHT TO PRIVACY – RHODE ISLAND LAW)

437. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 208, 219, 262-263, and 267-268 of the Complaint as if fully set forth herein.

438. Pursuant to R.I.G.L. § 9-2-28.1 (2), Plaintiffs have at all times had the right to be secure from an appropriation of their image or likeness.

439. Plaintiffs' meetings with their father at which they were led to believe that they were alone with him were videotaped during the period from 2003 to about October, 2007, without their consent or permission.

440. Although supposedly done for the protection and benefit of Glenn, the videotaping was in actuality done in furtherance of Carol's diabolical efforts to exert undue influence over and to isolate Glenn so that none of the plaintiffs would have the opportunity to reconcile with their father or stop the ongoing undue influence she utilized in gaining ultimate ownership of the fortress and influence, power and control over the Griggs & Browne companies.

441. Plaintiffs need not establish that the appropriation of their images and likenesses through the use of such videotaping was published to any other person.

442. Carol and any other individual defendant who participated in the violation of Plaintiffs' privacy rights as described herein are liable to plaintiffs for compensatory damages, plus interest, costs, and reasonable attorney fees under R.I.G.L. § 9-1-28.1 (b).

**COUNT IX**

(TORTIOUS INTERFERENCE WITH EXPECTANCY OF INHERITANCE)

443. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 58-74, 85-146, 163-164, 168-180, 185-187, 196-203, 207, 217-258, 273, 282-286 and 296-303 of the Complaint as if fully set forth herein.

444. As the majority of the Glenn's children and heirs at law, there existed at all relevant times a reasonable expectation on the part of the plaintiffs of receiving an appropriate inheritance from him or his estate

445. Carol, Gerstein, Heal, Dan, Deborah, and others presently not known with specificity intentionally interfered with plaintiffs' expectancy of inheritance.

446. The aforementioned individual defendants utilized conduct that was, in its nature, fraudulent, duress, and/or involved undue influence to achieve such interference.

447. Based upon Glenn's actions and affection for plaintiffs prior to the conduct undertaken by the individual defendants described herein, there existed a reasonable certainty that the expectancy of inheritance would have been realized but for the interference of such individual defendants and those acting in concert with them.

448. Plaintiffs have been damaged as a result of the actions of the individual defendants and those acting in concert with them by having their expected inheritance stripped away or diminished so completely as to result in their being materially disinherited from Glenn's estate.

**COUNT X**
(BREACH OF FIDUCIARY DUTY)

449. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 38-41, 75-84 (relating to Aubin), 85-92 (relating to change of corporate lawyers), 115-127 (relating to Vinci), 128-147 (relating to Veasey), 163-170, 175-179, 182-187, 202-209, 244-254, 256, 275-277, 281-286, 303 and 305 of the Complaint as if fully set forth herein.

450. The individual defendants each had fiduciary obligations to Glenn, the Griggs & Browne companies, and the Plaintiffs to assure that Glenn was not subjected to undue influence in his personal and/or business affairs.

451. Notwithstanding their various fiduciary obligations, they (individually and collectively) allowed and/or assisted Carol in exploiting Glenn by depriving him of longtime friends, advisors, contact with Plaintiffs, contact with anyone who challenged their nefarious schemes, depriving Glenn of access to, or the use of benefits, resources, belongings, and assets through the use of undue influence, deception, false representation and/or false pretenses.

**COUNT XI**
(INVALIDATION OF REAL ESTATE DEED)

452. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 59, 66 and 74 of the Complaint as well as all allegations of the "Exploitation" Count below as if fully set forth herein.

453. At all relevant times, Carol enjoyed a relationship of trust and confidence with Glenn that was fiduciary in nature in view of the fact that she (a) learned and experienced how to arrange his affairs for him and make him dependent upon her, (b) falsely misrepresented to him the state of his finances, (c) convinced him that she was the only person who had his best

interests at heart and in mind, (d) repeatedly lied to him about the intentions of his beloved children (the plaintiffs), (e) had gained experience in preying upon her own elderly father and (f) exercised undue influence over him to such an extent that he added her as a joint tenant to the property at 500 Nausauket Road, Warwick, Rhode Island 02886 ("the fortress").

454. Upon information and belief, Carol's efforts to make the transaction appear legitimate and voluntary on Glenn's part included pretending that she did not want to be added to the deed and taking Glenn to various other persons (including lawyers) and asking the unduly influenced and incapacitated Glenn whether he really wanted her on the deed in the presence of these people (thereby creating purported witnesses).

455. The totality of circumstances demonstrates that Carol's influence resulted in an unfair and unreasonable transfer of the fortress by deed to her as a joint tenant with Glenn.

456. Under the circumstances the deed should be declared invalid and the home at 500 Nausauket Road, Warwick, Rhode Island should be returned to Glenn's Estate and/or beneficiaries.

**COUNT XII**
(CONVERSION – RHODE ISLAND LAW)

457. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 59, 66 and 74 of the Complaint as well as all allegations of Count XI (invalidation of the Real Estate Deed) and the "Exploitation" Count below as if fully set forth herein.

458. Under Rhode Island law, whoever takes possession of the personal property of another without consent and exercises dominion over it inconsistent with that other person's right to possession commits conversion.

459. Carol's actions in obtaining a joint interest in the fortress home, in becoming its sole owner upon or at the time of Glenn's death, and in retaining that asset that should have

remained in Glenn's sole estate comprises conversion of that and any other property she may have so taken.

460. Accordingly, plaintiffs are entitled to the return of all such property (including specifically the residential real estate at 500 Nausauket Road, Warwick, Rhode Island.

WHEREFORE, plaintiffs demand the return of all of Glenn's real and personal property that has been wrongfully and/or pursuant to undue influence taken and converted to her own use, name and/or title by Carol and any persons acting at her direction, that until its return all such property be ordered held in a constructive trust for the benefit of Glenn's heirs at law (the Plaintiffs), for compensatory and/or exemplary damages, costs, expenses, interest and reasonable attorney fees.

**COUNT XIII**
(INVALIDATION OF WILL AND CODICIL)

461. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 299 and 301 of the Complaint and all factual allegations of the "Exploitation" Count below, as if fully set forth herein.

462. At all relevant times, Carol enjoyed a relationship of trust and confidence with Glenn that was fiduciary in nature in view of the fact that she (a) learned and experienced how to arrange his affairs for him and make him dependent upon her, (b) falsely misrepresented to him the state of his finances, (c) convinced him that she was the only person who had his best interests at heart and in mind, (d) repeatedly lied to him about the intentions of his beloved children (the plaintiffs), (e) had gained experience in preying upon her own elderly father and (f) exercised undue influence over him and isolated him from his friends and close family members to such an extent that she unduly influenced him to include herself and completely exclude

Monica and Lauren from the "Last Will and Testament" prepared and/or executed on or about July 28, 1999.

463. Apparently concerned with the validity of the Will of July 28, 1999 due to its complete omission of two of Glenn's children (Monica and Lauren) and concerns that one of the Executors named in the Will (Veasey) was suspicious of her influence and questioned Glenn's judgment and capacity to make decisions, Carol utilized the same or similar methods and undue influence to have Glenn execute a "First Codicil" to the July 28, 1999 Last Will and Testament, which such illegitimate instrument was executed on October 25, 2000.

464. To properly execute a Will or Codicil, a testator must be at least eighteen (18) years of age and of "sane mind" (R.I.G.L. § 33-5-2).

465. Plaintiffs have until the time of this Complaint been denied access to all of Glenn's healthcare records but are aware of certain examinations that question the mental capacity of Glenn at the times of the executions of these documents.

466. The Will and Codicil may have been executed in proper form but were the product of Carol's undue influence and should therefore be declared invalid.

467. Under Rhode Island law, plaintiffs may rely upon circumstantial evidence to meet their burden of proof of undue influence and/or coercion since it is often accomplished in secret.

468. The totality of circumstances demonstrates that Carol's influence resulted in the unnatural and disproportionate bequeathing of the putative estate.

469. As of the date of this Complaint, neither the Will nor the Codicil has been offered in Probate.

470. Under the circumstances, both the Last Will and Testament of July 28, 1999 and Codicil of October 25, 2000, should be declared totally invalid.

**COUNT XIV**
(INVALIDATION OF TRUST)

471. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 396-397 and 303 of the Complaint as well as all allegations of the "Exploitation" Count below, as if fully set forth herein.

472. At all relevant times, Carol enjoyed a relationship of trust and confidence with Glenn that was fiduciary in nature in view of the fact that she (a) learned and experienced how to arrange his affairs for him and make him dependent upon her, (b) falsely misrepresented to him the state of his finances, (c) convinced him that she was the only person who had his best interests at heart and in mind, (d) repeatedly lied to him about the intentions of his beloved children (the plaintiffs), (e) had gained experience in preying upon her own elderly father and (f) exercised undue influence over him and isolated him from his friends and close family members to such an extent that she and Heal caused a new Trust to be drafted and executed or amended on or about October 25, 2000.

473. Plaintiffs have made demand for a copy of the current Trust instrument or documents but their request has been denied.

474. Upon information and belief, Heal (having conspired and consorted with Carol) is named as Trustee of the October 25, 2000 "Trust" document and Debbie and Dan are "beneficiaries" thereof.

475. To properly execute a Trust, a settlor must have requisite capacity, and upon and belief, Glenn did not have such capacity on October 25, 2000.

476. Plaintiffs have until the time of this Complaint been denied access to all of Glenn's healthcare records but are aware of certain examinations that question the mental capacity of Glenn at the time of the execution of the Trust.

477. The Trust may have been executed in proper form, but was the product of undue influence and should therefore be declared invalid.

478. Under Rhode Island law, plaintiffs may rely on circumstantial evidence to meet their burden of proof of undue influence and/or coercion since it is often accomplished in secret.

479. The totality of circumstances demonstrates that Carol's influence and the participation of Heal and/or others resulted in the creation of the unnatural and disproportionate putative Trust.

480. Under the circumstances, the Trust executed on or about October 25, 2000 (and any subsequent amendments thereto) should be annulled and declared totally invalid.

**COUNT XV**
(ABUSE OF PROCESS)

481. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 103-112, 182-188, 191-199, 201-205, 209-210, 211-216, 224-234, 244-254, 270-295 and 304of the Complaint as if fully set forth herein.

482. Under Rhode Island law, when a legal proceeding, although set in motion in proper form becomes perverted so as to use the proceedings to accomplish an ulterior or wrongful purpose for which the process or proceedings were not designed, such activities give rise to a claim for abuse of process.

483. Despite having engaged in sequestering and attempting to isolate Glenn from several of his own children, Carol, Gerstein, Heal, Dan, Debbie, Bicki, Lepizerra, and/or others

acting in concert with them and/or at their direction, convened an ex parte meeting with a State Probate Court Judge (since deceased), setting in motion a series of Orders and allegations of "contempt" accompanied by false and malicious misrepresentations concerning the plaintiffs.

484. The aforementioned individual defendants misused legal process to continue and/or obtain an advantage not properly involved in the proceeding itself.

485. The actions of the named individual defendants were designed to estrange Glenn from the plaintiffs though as to allow them to continue to exert influence over Glenn and thwart any attempts by the plaintiffs to reestablish their relationship with their father since that might lead to the discharge and/or removal of the individual defendants from their positions and roles with respect to Glenn and the Griggs & Browne companies and bring to an end their stream of income being derived from Glenn and/or the Griggs & Browne companies.

486. The penultimate example of this abuse was Gerstein having advised Michael that he was prohibited from seeing his father, even though Michael had never been named in nor served an Order that prevented him from seeing his father.

487. More recently, Deborah has advised that the aforementioned individual defendants (or most of them) are seeking financial penalties against Christine, Lauren and others to "drive you into bankruptcy."

488. Under the totality of circumstances, the aforementioned individual defendants have sought and obtained restraining and/or contempt orders for purposes entirely unrelated aforementioned Probate proceeding, resulting in an abuse of process for which plaintiffs have suffered anxiety, emotional distress for the violation of their legal rights and/or other damages.

**COUNT XVI**
(Exploitation)

489. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs 38-41, 75-84 (regarding Aubin), 42-74, 217, 224, 225, 241-255 (relating to Carol), 85-92 (regarding changing corporate counsel), 93-114 (regarding medical issues), 115-127 (relating to Vinci's ouster), 128-147 (concerning Veasey), 148-190 (regarding Michael), 191-216 (regarding Deborah), 217-269 (concerning isolation at the Nausauket property), 270-295 (about certain Probate Court matters), 296-303, 304-311 (documents) of the Complaint as if fully set forth herein.

490. Article I, § 24 of the Rhode Island State Constitution is entitled **"Rights not enumerated – State rights not dependent on federal rights"** and provides that the enumeration of various rights in the other sections or articles of the state constitution "shall not be construed to impair or deny others retained by the people". It also provides that "(t)he rights guaranteed by (the Rhode Island) Constitution are not dependent on those guaranteed by the Constitution of the United States."

491. R.I.G.L.§ 9-1-2 is entitled **"Civil liability for crimes and offenses"** and provides, in pertinent part, that "(w)henever any person shall suffer any injury to his or her person, reputation or estate by reason of the commission of any crime or offense, he or she may recover his or her damages in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made".

492. R.I.G.L. § 42-66-8.2 (d) provides that the State Department of Elderly Affairs shall immediately forward information to law enforcement agencies if it has reasonable cause to know or suspect that a person sixty (60) years of age or older has been a victim of "exploitation" as defined in that chapter of the laws of the State of Rhode Island.

493. R.I.G.L. § 42-66-4.1 (2) defines "Exploitation" as the "the fraudulent or otherwise illegal, unauthorized or improper act or process of an individual, including, but not limited to, a caregiver or fiduciary, that uses the resources of an elder for monetary or personal benefit, profit, gain, or that results in depriving an elder of rightful access to, or use of, benefits, resources, belongings, or assets by use of undue influence, harassment, duress, deception, false representation or false pretenses".

494. The "Exploitation" described and defined in the preceding paragraph constitutes a type of crime or offense within the meaning of R.I.G.L. § 9-1-2.

495. Upon information and belief, the State Department of Elderly Affairs attempted to investigate Glenn's condition but were thwarted by Carol and took no further action.

496. Under the circumstances and based upon the aforementioned constitutional and statutory provisions of Rhode Island law, the actions of Carol, Deborah, Dan, Heal, Gerstein, Bicki and others presently unknown to plaintiffs toward Glenn were such as to constitute exploitation.

497. Plaintiffs have been materially harmed and damaged and continue to be harmed and damaged in their persons, reputations and/or estates as a result of such exploitation.

498. Plaintiffs are accordingly entitled to their damages from such individual defendants pursuant to R.I.G.L. 9-1-2

**COUNT XVII**
(Common Law Conspiracy)

499. Plaintiffs restate and incorporate, by reference, the allegations of Counts VII to X, XII, XV and XVI of the Complaint as if fully set forth herein.

500. Common law conspiracy is recognized and may be prosecuted and punished as an offense in accordance with R.I.G.L. §11-1-1.

501. Common law conspiracy involves a combination of two or more persons to commit some unlawful act or do some lawful act for an unlawful purpose.

502. Common law conspiracy is complete when the agreement has been made and does not require any overt acts take place in furtherance of the agreement.

503. In Rhode Island, common law conspiracy is a separate and distinct offense from the substantive offense or offenses for which the conspiracy was formed.

504. Upon information and belief, the individual Defendants have combined, conspired and confederated on one or more occasions to conceal and further their Fraud, Larceny, Conversion, Embezzlement, and/or Unlawful Appropriation, Violation of Privacy, Exploitation, and Abuse of Process.

505. Upon information and belief, the individual Defendants have combined, conspired and confederated on more than one occasion to conceal and further their "racketeering activities," including, but not limited to larceny, and the goals of the enterprise(s) that they created and as defined by R.I.G.L. §7-15-2.

506. Plaintiffs have been materially harmed and damaged and continue to be harmed and damaged in their persons, reputations and/or estates as a result of such common law conspiracy.

507. Plaintiffs are accordingly entitled to their damages from each and all of the individual defendants pursuant to R.I.G.L. § 9-1-2

**COUNT XVIII**
(Declaratory Relief)

508. Plaintiffs restate and incorporate, by reference, the allegations of Counts X through XIV and XVI of the Complaint as if fully set forth herein.

509. In furtherance of the Court's federal claims jurisdiction this Court has jurisdiction to allow Declaratory relief pursuant to 28 U.S.C. § 2201.

510. In furtherance of its pendant jurisdiction over the state causes of action made herein, this court has further jurisdiction to allow declaratory relief pursuant to Title IX, Chapter 30 of the General Laws of Rhode Island 1956, as amended (known as the "Uniform Declaratory Judgments Act"), in that Plaintiffs request that the court declare rights, status, and other legal relations of and among the parties.

511. Accordingly, Plaintiffs respectfully request that this court grant them declaratory review and relief ; namely that it do the following:

512. Construe the facts, circumstances and rights of the parties;

513. Declare that the deed to the improved real estate at 500 Nausauket Road, Warwick, Rhode Island was the product of undue influence, is invalid, and that title to such property should be returned to Glenn's Estate and/or beneficiaries;

514. Declare that the Last Will and Testament of July 28, 1999 and Codicil of October 25, 2000, were also the products of undue influence and/or that Glenn lacked sufficient capacity to understand their meaning, thus should be declared totally null, void and invalid;

515. Declare that the Trust executed on or about October 25, 2000 (and any subsequent amendments thereto) was also the product of undue influence and/or that Glenn lacked sufficient capacity to understand its or their meaning, thus should be annulled and declared totally void and invalid;

516. Declare that Plaintiffs are entitled to a full accounting and to recover all monies or things of value (including real estate) that the individual Defendants improperly, unlawfully converted, misappropriated, or fraudulently received (including legal fees paid to lawyers to prepare documents and/or to commence and/or defend litigation against or related to Plaintiffs) and/or have transferred to the aforementioned Trust or any amendments thereto;

517. Declare that the individual Defendants are not legally entitled to hold title to and must return any and all of Glenn's property and putative estate over which they exercised dominion and control or obtained control by the use of undue influence, exploitation, false pretenses, artifice or other illicit means;

518. Declare that under the circumstances any documents or purported agreements that claim to limit the rights of any or all of the Plaintiffs to proceed with this action are annulled and voided as the product of extortion or for lack of consideration;

519. Declare that none of the individual Defendants legally and/or equitably entitled to manage, control, act as officers of, act as directors of, hold shares in or otherwise profit from any or all of the Griggs & Brown Companies;

520. Construe the law and matters in question and determine the rights and obligations of parties under these circumstances;

521. Make such further orders that are appropriate in the circumstances, to the end that all parties have clear notice and understanding of the decision and directives of this court and;

522. Pursuant to 28 U.S.C. § 2202, grant Plaintiffs such further relief, as may be fitting, just and appropriate in the circumstances, including but not limited to an award of Plaintiffs' attorney fees and costs.

**COUNT XIX**
(Injunctive Relief)

523. Plaintiffs restate and incorporate, by reference, the allegations of paragraphs21, 56-59, 61-64, 66, 73-74, 115-127, 128-147, 161-183, 191-210, 228-235, 256-257, 270-295, 296-303, 304-311, Counts I, II & VI of the Complaint as if fully set forth herein.

524. The actions of the individual defendants have been and are such as to create a tangible and real fear that they will continue to loot, transfer, hypothecate, misappropriate and/or pilfer Glenn's estate, the Trust and/or the assets of some or all of the Griggs & Browne companies for their own benefit or in an attempt to place such assets beyond Plaintiffs' reach.

525. Under the circumstances, Plaintiffs have no reasonable remedy at law and to the contrary will suffer irreparable harm, save by and through this court's equitable powers of injunctive relief;

526. Plaintiffs have presented a compelling showing of the probability of their success on the merits of their claims.

527. Accordingly, Plaintiffs request that defendants be temporarily and permanently restrained and enjoined from continuing to unlawfully use the income and assets of Glenn's estate, the Trust, real estate taken from him by undue influence and from any and all of the Griggs & Browne companies.

528. Further, that the individual Defendants be temporarily and permanently enjoined

and restrained from continuing to use and enjoy the benefit of any assets and income or property that has been unjustly and fraudulently acquired by them and/or using Glenn's assets, Trust assets and/or the assets of any or all of the Griggs & Browne companies to pay their expenses, costs and/or legal fees in this litigation.

529. Restrain and enjoin the individual Defendants and any other person(s) acting at their direction or on their behalf from destroying and/or disposing of any and all evidence of their financial and corporate transactions that involved the acquisition of any property, real or personal, belonging to or through the use of Glenn's assets, Trust assets, and/or the assets of any or all of the Griggs & Browne companies.

530. Restrain and enjoin the individual Defendants and any other person(s) acting at their direction or on their behalf from destroying or disposing of any and all evidence of Glenn's health records, mental status evaluations, decision-making ability assessments, or other personal records.

531. That the individual Defendants be restrained and enjoined from disposing of, alienating, selling, secreting, hypothecating, wasting, or transferring assets or real or personal property derived from Glenn, his estate, the Trust and/or any or all of the Griggs & Browne companies, whether allegedly belonging to them personally, held by or in a business entity, in trust, in offshore accounts, or any other manner.

532. That the individual Defendants be restrained and enjoined from attempting to offer the so-called Last Will and Testament of Glenn Griggs or any such testamentary instrument for Probate or for any other purpose in any state court.

533. That the individual Defendants be ordered to cause all health records for or pertaining to Glenn (including so-called "DMAT" evaluations to be provided plaintiffs forthwith.

534. Finally, that the court retain jurisdiction and grant plaintiffs such further relief and orders as may be fitting, just, necessary and/or appropriate in the circumstances.

## ATTACHMENT/ ORDER OF LIS PENDENS

535. Plaintiffs hereby give notice that they have/will file Notice of Lis Pendens in the land evidence records of the City of Warwick, Rhode Island with respect to the following real property that plaintiffs allege Carol gained title to by fraud, exploitation and/or undue influence: 500 Nausauket Road, Warwick, Rhode Island ("the fortress").

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court enters judgment against the Defendants individually, jointly, and severally as follows:

A. Construe the facts and circumstances described herein;

B. Declare the parties' rights and obligations;

C. Temporarily and Permanently Enjoin the individual defendants and/or any person acting by, through or for them from using, accessing, or appropriating the income and/or profits of the Griggs & Browne companies, its cash reserves, property, customer information, and any other asset(s) thereof directly or indirectly for their individual use or benefit.

D. Order the Rescission of all Conveyances, Trusts, Deeds, Transfers, Assignments, Codicils, Wills and Amendments that are the products of misrepresentation, undue influence, and duress and incapacity.

E. Order Defendants to divest themselves of any interest, direct or indirect, derived from Griggs & Brown Companies

F. That Plaintiffs be awarded compensatory damages, in an amount to be determined at trial, plus interest;

G. That Plaintiffs be awarded treble and/or punitive damages;

H. That Plaintiffs be awarded interest, costs and reasonable attorney fees; and,

I. That Plaintiffs be awarded all further relief that this Court deems appropriate under the circumstances.

## CLAIM OF JURY TRIAL AND DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby claim a trial, by jury, on all issues herein that are so triable. They designate John B. Reilly as and for their trial counsel.

PLAINTIFFS
By Their Attorneys,

John Reilly & Associates,

Date: June 21, 2008

John B. Reilly (#1811)
John Reilly & Associates
100 North Main St., 4th Floor
Providence, RI 02903
tel: 401-272-2800
fax: 401-272-2811

**VERIFICATION**

The undersigned, being duly sworn upon oath, hereby depose and say that:

1. We are the plaintiffs in the preceding matter.

2. We hereby verify that the facts and matters contained in the foregoing Complaint are, to the best of our collective personal knowledge and belief, true and accurate and, with respect to those matters which are asserted to be "upon information and belief," we believe them to be, to the best of our individual and collective personal knowledge and belief, as stated.

Subscribed and sworn before me at Providence, Rhode Island, this 21st day of June, 2008.

Notary Public
Exp.: ____________________