**H**
In re Estate of Griggs
R.I.Super.,2006.
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Rhode Island Superior Court,
Providence County.
In re ESTATE OF Glenn GRIGGS.
**Nos. KP 2005-949, KP 2005-950, KP 2005-951.**

Dec. 12, 2006.

## DECISION

THOMPSON, J.

*1 This matter is before the Court on three related appeals by Courtney Griggs, Christine Peabody and Lauren Griggs ("Appellants"), daughters of Glenn Griggs ("Intervenor"), from an Order and Decision of the Probate Court of the City of Warwick filed on October 19, 2005. The Probate Court's Order (i) appointed David Heal the permanent guardian of the Intervenor's assets that were not already protected by his estate plan, (ii) denied the Appellants' Motion for Recusal of the Probate Court Judge, and (iii) held that the Appellants had each previously waived her respective rights to object to the appointment of Mr. Heal as permanent limited guardian of the Intervenor's estate. Jurisdiction over probate appeals is pursuant to G.L.1956 § 33-23-1.

## I

## Facts and Travel

In October 2000, Lauren Griggs and Christine Peabody ("Petitioners") filed a petition seeking to have themselves named as guardians of the Intervenor. *In re Estate of Glenn E. Griggs,* Warwick Probate Court Docket No. 2000-418.After discovery and numerous hearings, the Probate Court denied and dismissed the guardianship petition, concluding that less restrictive alternatives were available in the form of appropriate financial planning documents that the Intervenor had already executed. *Griggs v. Estate of Griggs,* 845 A.2d 1006, 1008 (R.I.2004) ("*Griggs I*"). Petitioners then filed an appeal in Superior Court, challenging virtually every order and decision of the Probate Court, and further seeking access to many of the Intervenor's sealed financial records.*In re Griggs,* KP01-0664. The Superior Court dismissed the subsequent guardianship petition appeal on the grounds that the decision making assessment tool ("DMAT") relied upon by Petitioners was not properly prepared by any of the Intervenor's treating physicians. *Id.; Griggs I,* 845 A.2d at 1009. Thereafter, the Rhode Island Supreme Court dismissed the case on the grounds that the Superior Court lacked jurisdiction to determine the probate appeal as Petitioners had failed to file a sufficient record-including relevant transcripts and other discovery documents-as required by G.L.1956 § 33-23-1(a)(2).*Griggs I,* 845 A.2d at 1010.

On June 22, 2003, prior to the Supreme Court's rendering a decision in *Griggs I,* the Appellants and Intervenor's ex-wife, Patricia Griggs, under the guidance of counsel, took the matter into their own hands and removed the Intervenor from his home, hiding him from his other family members, his business partners, and his counsel. (*See Patricia Dep.,* 4/5/04 at 302.) During this time, Appellants caused him to terminate his legal counsel via fax and to hire counsel more sympathetic to the Appellants. (*See Patricia Dep .,* 4/5/04 at 302.) Appellants also caused the Intervenor purportedly to execute certain legal documents, granting them Power of Attorney over his estate. (*See Patricia Dep.,* 4/5/04 at 302.) Based on this power, Appellants requested access to a number of the Intervenor's confidential financial documents. (*See Patricia Dep.,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4/5/04 at 302.)

*2 On June 26, 2003, in response to these actions by the Appellants, the Intervenor's son, Dan Griggs, filed an emergency Petition for Limited Guardianship and Temporary Limited Guardianship, which the Intervenor joined. (Tr. 7/3/03 at 33-36; Tr. 8/12/04 at 62-64.) After a hearing, the Probate Court entered a Temporary Guardianship Order, placing the Intervenor in the custody of Dan Griggs and David Heal, the Intervenor's previous fiduciary. Subsequently, on April 15, 2004, Mr. Heal was appointed temporary limited guardian over the Intervenor's estate with very restricted authority.

At some point during these proceedings, the regularly appointed Warwick Probate Court Judge, Mary McCaffrey, recused herself from the case. Pursuant to Warwick Charter § 8-14 and G.L.1956 §§ 8-4-12 and 8-9-5, John Earle, the Solicitor of the City of Warwick, became the acting Probate Judge for this matter. At a later point, while this case was before acting Probate Judge Earle, Judge Mary McCaffrey resigned her seat on the Warwick Probate bench. In April 2005, the Warwick City Council appointed Judge Steven Isherwood as the new Probate Judge of Warwick.

On September 19, 2005, in order to protect those assets of the Intervenor not within the ambit of the private financial planning documents which the Probate Court had found to be a suitable, less restrictive means to a limited guardianship, David Heal, as temporary limited guardian, and the Intervenor filed a Joint Motion and proposed Consent Order to appoint Mr. Heal as the Intervenor's permanent limited guardian. Appellants timely objected to the Motion and proposed Consent Order, arguing that the appointment of Probate Judge Isherwood in April 2005 removed the case from the purview of acting Probate Judge Earle. Arguments were heard on September 22 and 29, 2005. On September 29, 2005, the Probate Court appointed Mr. Heal the limited permanent guardian of those assets of the Intervenor which were within the jurisdiction of the Probate Court, denied the Appellants' Motion for Recusal of the Probate Court Judge and further held that the Appellants each waived her respective rights to object to the appointment of Mr. Heal as permanent limited guardian. Each of the three Appellants filed timely, separate appeals of this Order, along with reasons therefor, in accordance with § 33-23-1(a)(2).

Appellants' joint reasons for appealing are (i) the Probate Court's denial of their Motion for Recusal of acting Probate Court Judge John Earle was made "against the evidence of law and the reasonable weight thereof"; (ii) the entry of the Order appointing David Heal as the Intervenor's permanent guardian was made without the requisite notice required by G.L.1956 §§ 33-15-10 and 33-15-17.1; (iii) the appointment of David Heal without filing a current DMAT also violates G.L.1956 § 33-15-4; and (iv) the Order was not in the best interests of the Intervenor or his estate.

Appellant Christine Peabody also contests in her appeal that she waived her right to object to the appointment of David Heal as the permanent guardian of the Intervenor's estate. Although not stated in their reasons for appeal, Appellants Lauren Griggs and Courtney Griggs also deny, by inference and explicitly in the Appellants' joint Memorandum of Law in Opposition to Intervenor's Consolidated Memorandum, that they waived their rights to object to the appointment of David Heal as the permanent guardian of the Intervenor's estate.

*3 Pursuant to § 33-23-1(a)(2), along with their reasons for appeal, Appellants filed two of the approximately 22 transcripts, paid for and provided by the Intervenor's estate, that are on file with the Warwick Probate Court. The Appellants also filed eight various Orders and Decisions of the Probate Court, including the Order at issue in these appeals, as well as memorandum in support of and in opposition to Appellants' Motion to Recuse Judge Earle. Along with their reasons for appeal, the Appellants did not file any other documents-including the approximately ten depositions (consisting of 32 volumes) or the 144 exhibits-which are filed with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Warwick Probate Court as part of the record of this case.

### II

### Grounds for Motion

The Intervenor moves to dismiss all three appeals for lack of jurisdiction pursuant to § 33-23-1, claiming that the Appellants transmitted an insubstantial and insufficient record to this Court and have therefore failed to perfect their appeal. In response, the Appellants assert that the record filed is substantial and sufficient enough for this Court to pass on each of the reasons given for appeal. Thus, the narrow issue before the Court is whether or not the Appellants have provided enough of a record for this Court to pass on the issues presented in the Appellants' reasons for appeals.

### III

### Analysis

"The question of lack of jurisdiction can 'beCOA No. raised at any time on motion, and should be determined at the earliest stage of the proceedings if possible....' "*Young v. Young,* No. 01-0075, 2006 R.I.Super. LEXIS 87, 2006 WL 2062134 (July 12, 2006) (quoting *David v. David,* 47 R.I. 304, 306, 132 A. 879, 880 (1926)). Furthermore, "whenever it appears that the court has no jurisdiction the court of its own motion should stop the proceedings."*David,* 47 R.I. at 306, 132 A. at 880.

Section 33-23-1, which confers jurisdiction of Probate Court appeals on the Superior Court, requires that an appellant file the claim of appeal within 20 days of the execution of the order and all other documents pertaining to the appeal within 30 days of the execution of the order. *Griggs I,* 845 A.2d at 1009 (citing §§ 33-23-1(a)(1), (a)(2)). These deadlines are jurisdictional in nature, and they may not be waived or extended by "a sympathetic trial justice." *Id.* (quoting *In re Estate of Speight,* 739 A.2d 229, 231 (R.I.1999)); *see also Kelly v. Jepson,* 811 A.2d 119, 123 (R.I.2002). Indeed, questions involving the timing of appeals brought under § 33-23-1 are considered "statute of limitations questions." *Hart v. LeBlanc,* 853 A.2d 1217, 1219 (R.I.2004) (citing *Griggs I,* 845 A.2d 1006). If the record transmitted by an appellant fails to meet the statutory requirements of § 33-23-1, the appeal is not properly perfected, the Superior Court lacks jurisdiction over the matter, and the justice must dismiss the case. *Griggs I,* 845 A.2d at 1011. As part of the 30-day statutory deadline, the appellant must submit the relevant record, along with his or her reasons for appeal.*Id.* at 1009 (citing § 33-23-1(a)(2)). To properly perfect the appeal, the record submitted must be a "substantial portion of the record relevant to" the issues raised on appeal. *Id.* at 1011.

***4** "If a Superior Court justice finds that additional information is needed in the record, then the justice 'may require or permit subsequent corrections or additions to the record.' " *Id.* at 1010 (citing § 33-23-1(b)). The Superior Court should not dismiss an appeal from the Probate Court for relatively minor omissions to the relevant record. *Id.* at 1010;*Hart,* 853 A.2d at 1219, n. 1;*see also*5 Am.Jur.2d *Appellate Review* § 497 (2006) (citing *Eldridge v. Aztec Well Servicing Co.,* 105 N.M. 660, 735 P.2d 1166 (N.M.Ct.App.1987)). In *Hart,* the Supreme Court cautioned that "the Superior Court should rarely if ever dismiss a Probate Court appeal solely for the appellant's mere failure to submit *one or more* arguably relevant portions of the transcript...." *Hart,* 853 A.2d at 1219, n. 1 (emphasis added) ("[a]s long as the appellant makes a timely and good faith effort" to provide the relevant record, the appeal should not be dismissed). On the other hand, "[§ ]33-23-1(b) should not be interpreted as a loophole allowing inattentive parties to perfect the appeal by initially supplying the court with [only] a smattering of documents, then supple-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

menting the record later...." *Griggs I,* 845 A.2d at 1010 (citing § 33-23-1(b)). Indeed, "[o]nly after a *substantial* portion of the relevant documents have been filed" is an appeal from the probate Court properly perfected, and only then can "a motion justice ... consider whether any additions or corrections are needed." *Id.* at 1010-1011 (emphasis added.) Indeed, the Superior Court's ability to maintain jurisdiction over the case or to permit additions to the record once the § 33-23-1 deadline has passed is contingent on the appellant's good faith filing of a substantial and sufficient portion of the record relevant to each issue on appeal. *Id.* (citing § 33-23-1(b)); *see also Hart,* 853 A.2d at 1219, n. 1.

For purposes of § 33-23-1, a "substantial" or "sufficient" record consists of those "documents filed with the probate court and certified by the probate clerk which are relevant to the claim of appeal [as well as] the transcript[s], if any,[FN1] of the relevant probate court proceedings."*Hart,* 853 A.2d at 1219 (citing § 33-23-1(b)). In other words, the record submitted must be enough to "allow the Superior Court to pass on each issue raised in the appeal."*Griggs I,* 845 A.2d at 1011 (citing *Savoy Realty Corp. v. LPL, Inc.,* 121 R.I. 962, 401 A.2d 61 (R.I.1979)). Therefore, whether the record is substantial or sufficient or not ultimately depends upon the issues presented by the appellants in their appeal. *Id.; see also*5 Am.Jur.2d *Appellate Review* § 484 (2006) (citing *Coulter v. Michelin Tire Corp.,* 622 S.W.2d 421 (Mo.Ct.App.1981); *Buckley v. State,* 337 N.W.2d 822 (S.D.1983)).

FN1. The phrase "if any" found in the statute and case law "reflects that the Probate Court is not a court of record so there often will be no transcripts available on appeal...."*Hart,* 853 A.2d at 1219. However, pursuant to statute, "at the request of either the Probate Court judge or one of the parties, the proceedings shall be recorded by either electronic or stenographic means."*Id.* (citing G.L.1956 § 33-22-19.1(a) and (b) ("[a] party wishing to record the proceedings ... may do so at his own expense.")). Even if the transcript is not officially made a part of the record, if a recording was made during the Probate Court proceedings, then appellants must submit a written transcript "of the relevant probate court proceedings" in order to perfect their appeal. *Hart,* 853 A.2d at 1219-1220 (citing § 33-23-1(b)).

For example, in *Griggs I,* the Supreme Court noted that the appellants had "contested *many* of the rulings made by the Probate Court," including, among other things, whether or not they should have been granted access to certain sealed documents belonging to the intervenor. 845 A.2d at 1011 (emphasis added). The *Griggs I* Court, ignoring the other issues raised on appeal, then dismissed the entire matter for lack of jurisdiction because the appellants had not requested that those relevant sealed documents be submitted to the Superior Court. *Id.* ("the sealed documents were relevant to petitioners' appeal, so petitioners were obligated to have those documents transmitted to the Superior Court within thirty days of the Probate Court's execution of the order"). In *Hart,* on the other hand, the *only* issue on appeal was whether the Probate Court judge's denial of the petition was proper. *Hart,* 853 A.2d at 1219. The petitioner in that case submitted several pages from the transcript covering the Probate Court judge's decision to deny the petitioner's request and the reasoning behind that determination. *Id.* The Court held in that case that the petitioner has submitted the relevant portions of the record within the deadline, thereby perfecting his appeal. *Id.*

*5 As submission of an insubstantial or insufficient record which is silent as to the material facts or evidence on a particular point raised on appeal removes the appeal from the jurisdiction of the Superior Court and results in the affirmance of the Probate Court's ruling on the matter, the Court's threshold determination should be whether the record submitted is substantial as to each issue raised

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by the appellant. *Griggs I*, 845 A.2d at 1011;*see also*5 Am.Jur.2d *Appellate Review* § 497 (2006) (citing *Powell v. KhodariIntergreen Co.*, 334 N.W.2d 127 (Iowa 1983)). To determine if the record submitted is sufficient, the Court must look to each of the Appellants' stated reasons for appeal, examine the record as submitted (along with the memoranda submitted by both parties), and establish if there remain issues which the Court cannot pass on based on the record submitted. If the record is insufficient, the appeal is not perfected, the Superior Court lacks jurisdiction over the appeal, and the ruling of the Probate Court stands.

## IV

## Discussion

### A

### The Record Is Substantial and Sufficient As to the Recusal Issue

The acting Probate Court Judge John Earle, whose Order is being appealed, was cloaked in authority under Warwick Charter § 8-14 and G .L.1956 §§ 8-4-12 and 8-9-5 when Probate Judge McCaffrey recused herself from this case. While acting Judge Earle was sitting on this case, but before a final decision was reached, the Warwick City Council appointed Judge Isherwood as the new permanent Probate Judge. Six months later, although acting Probate Judge Earle had sat in on this case for approximately two years and was nearly prepared to render a decision, the Appellants claimed that he no longer had jurisdiction over the case and was, by operation of law, stripped of his temporary position as acting Probate Judge. During the September 29, 2005 hearing, acting Judge Earle rendered a bench decision denying the Appellants' Motion for Recusal. All three Appellants state, as a reason for appeal, that the denial of their Motion for Recusal was made "against the evidence of law and the weight thereof."

The Appellants have transmitted the relevant memoranda in support of and in opposition to the Appellants' Motion to Recuse, along with the transcript of the September 29, 2005 hearing, bench decision and Order denying the Motion. The Appellants' Motion to Recuse, based on the operation of Warwick Charter and the Rhode Island General Laws, is a question of law,[FN2] and this issue is substantially and sufficiently covered in the record which the Appellants have provided. Indeed, this appears to be the only issue discussed at any length in the record submitted to this Court. Therefore, the Court holds that the Court could pass on the recusal issue, and thus the record submitted is substantial and sufficient as to that issue.

FN2. Generally, "a party who seeks the recusal of a trial justice must set forth *facts* which establish that the justice has a 'personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his impartiality seriously and to sway his judgment.'" *Kelly v. Rhode Island Pub. Transit Auth.*, 740 A.2d 1243, 1246 (R.I.1999) (emphasis added) (quoting *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977)). As such, a Motion to Recuse is traditionally a question of fact. However, in this instance, the Appellants base their Motion to Recuse" entirely on the operation of law.

### B

### The Record Is Not Substantial or Sufficient As to the Notice Issue

***6** Rhode Island law requires that, "[e]xcept for the appointment of a temporary guardian, no petition for ... guardian shall be heard and no person shall be [so] appointed" unless notice and a copy of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

petition are transmitted to the respondent (the person to be protected by the contemplated guardianship; here, the Intervenor) within 14 days. General Laws 1956 § 33-15-17.1(a). Similar notice must also be provided to the petitioners and any of the respondent's heirs in a timely fashion. Sec. 33-15-17.1(e). Appellants state, as a reason for appeal, that the Probate Court's Order was entered without the mandated notice of § 33-15-17.1 because the Order created a *permanent* guardianship, not a *temporary* guardianship as the Appellants claim was originally contemplated. The Appellants describe the appointment of a permanent guardian as a "new matter" or "new proceeding," triggering the mandatory re-notice requirements of the statute.

Whether new notice is required in an on-going probate litigation in this circumstance is a question of law. Unlike the recusal issue, however, the Appellants have provided no transcripts, memoranda or orders regarding the issue. The Intervenor, however, has pointed to the Probate Court transcript of April 15, 2004 which, according to the Intervenor, shows that the Probate Court below already heard arguments relating to the issue of re-noticing and subsequently ruled that the filing of a motion in an on-going guardianship proceeding does not trigger the notice requirements of § 33-15-17.1. The Intervenor also points out that the Appellants' own counsel filed at least two motions seeking permanent guardianship during this on-going litigation without employing the notice requirements, suggesting that, at least at some point during these proceedings, the Appellants themselves did not consider the appointment of a permanent guardian a "new matter," and perhaps waived this argument by doing so. More importantly, the transcript from the September 29, 2005 hearing, which *is* part of the record before the Court, suggests that the issue of whether the appointment of Mr. Heal as permanent guardian was a "new matter" may have been previously argued and decided at some earlier point by the Probate Court. (Tr. 9/29 at 10, lines 7-8) (Appellants state that "[m]otions were filed at the time when this new so-called consent order was entered," yet those motions and any subsequent hearings which may have resolved those motions are not part of the record.)

Neither the transcript of the hearing, nor the motions of the Appellants' counsel noted by the Intervenor, nor the motions mentioned in the record itself regarding the issue of re-notice are part of the record before this Court. Without such a record this Court is unable to know whether or not the issue of re-notice was argued or waived by the parties below. Therefore, although the application of § 33-15-17.1 is an issue of law which the Court would review *de novo*, these documents would clearly impact the Court's ability to pass on the issue as it has been raised on appeal. Without the relevant transcripts before it, this Court holds that it is unable to meaningfully review the issue, and the record in this regard is insubstantial and insufficient.FN3As such, the Court has no jurisdiction over the appeal.

FN3. Having found the record insufficient in regard to at least one issue raised on appeal, the Court's inquiry must stop, as it no longer has jurisdiction over the case. However, due to language of the footnote in *Hart* which cautions against dismissing Probate Court appeals for insufficient record, and in an effort to thoroughly document the Court's reasoning in the likely event of an appeal, the Court will continue to apply the *Griggs I* standard to each of the Appellants' reasons for appeal.

**C**

**The Record Is Not Substantial or Sufficient As to the DMAT Issue**

*7 According to Rhode Island statute, at least one DMAT, completed by a physician who has examined the respondent, must be filed with each petition for guardianship. G.L.1956 §§ 33-15-4(a)(2) and (3). The three Appellants, concerned that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

limited nature of the guardianship ordered by the Probate Court may not adequately protect the Intervenor, now appeal because no *current* DMAT was filed along with the Joint Motion and proposed Consent Order. Identical to the re-notice issue above, this challenge is based solely on the premise that the Joint Motion and proposed Consent Order and the subsequent appointment of Mr. Heal as the Intervenor's permanent guardian commenced a "new matter" or "new proceeding," and thus initiate new DMAT requirements.

Again, whether or not the statute requires a "current" DMAT is a question of law for this Court to determine. However, for § 33-15-4 to even be triggered, the Court must first determine if the appointment of Mr. Heal as the Intervenor's permanent guardian constituted a new proceeding. In order to pass on this issue, then, this Court would require the same documents (noted in subsection (B)) previously found to be lacking in the record. Therefore, the Court holds that the record as regards the requirement of a new DMAT is also insubstantial and insufficient.

### D

### The Record Is Not Substantial or Sufficient As to the Best Interests Issue

All three Appellants state, as a reason for appeal, that the Order of the Probate Court regarding the appointment of Mr. Heal as a permanent limited guardian is "not in the best interests of [the Intervenor or his estate]." The determination of what is or is not in the "best interests" of a person who stands before a court requires the exercise of sound judicial discretion and necessarily involves a fact-based inquiry. *See e.g. In re Kayla N.,* 900 A.2d 1202 (R.I.2006). Rhode Island has a settled judicial tradition of engaging in an examination of *all* relevant circumstances when determining what is in a person's "best interests," particularly when that person is impaired or otherwise incapable of making his or her own decisions because of age or infirmity. *See e.g., Andreozzi v. Andreozzi,* 813 A.2d 78, 82 (R.I.2003); *In re Jane Doe,* 533 A.2d 523 (R.I.1987). As such, this Court would require most-if not all-of the record below in order to meaningfully pass on the issue of whether the Order of the Probate Court was in the Intervenor's best interests.

The Appellants, however, have chosen to limit the record which they transmitted to this Court. They have only submitted two transcripts and only those various motions, objections, memoranda, and court orders which were filed between September 19, 2005 and October 18, 2005. No other available evidence or document, in any form, has been submitted to this Court. The Intervenor, on the other hand, has alleged that the Probate Court entered "a multitude" of orders not in the record before this Court, and that at least 20 additional transcripts, ten depositions (consisting of 32 volumes), and 144 exhibits make up the certified record of the case at bar. This extensive record is consistent with the fact that this dispute has been on-going since at least June 26, 2003.

***8** Importantly, the record which *has* been submitted indicates that a voluminous record exists. (Tr. 9/22 at 16, lines 9-15) ("if I were to excuse myself ... it would require that Judge Isherwood review and digest approximately eight file boxes worth of materials before he assumed responsibility to act as a judge in future proceedings....") On record, even Appellants' counsel concede that this large record would be required for a *de novo* court to rule on the case. (Tr. 9/22 at 27, lines 6-16) ("I would submit that all the record is there for ... a Superior Court ... to come in and familiarize [itself] with the record ... that's why we have stenographers ... the record is there for [the Court] to review.")

The Appellants' failure to transmit more than a fraction of the record from the proceedings below is fatal to the ability of this Court to pass on any question of what is or is not in the best interests of the Intervenor or his estate. As such, the record in this regard is clearly insubstantial and insufficient.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### E

### The Record Is Not Substantial or Sufficient As to the Waiver Issue

The Probate Court Order holds that all three Appellants waived their right to object to the appointment of Mr. Heal as a limited guardian of the Intervenor. Only Appellant Christine Peabody explicitly contests this holding as a reason for her appeal. However, the other two Appellants join this argument by implication as, through this appeal, they contest the appointment of Mr. Heal, and they specifically state their objection to the finding of waiver in their Memorandum of Law in Opposition to Intervenor's Consolidated Memorandum.

The Intervenor and the record submitted to this Court suggest, however, that the issue of whether or not-and to what extent-the Appellants waived their right to object to Mr. Heal's appointment was discussed numerous times during hearings which are not part of the record before the Court. (Tr. 9/22 at 19, lines 17-21) ("[Appellants] have waived their rights to object to the appointment of David Heal ... consistently throughout these proceedings ..."). The Probate Court itself expressly acknowledged some form of waiver in its findings. (Tr. 9/29 at 42, lines 4-6) ("[Appellants] have previously waived any right to object to the appointment of a guardian"); (Tr. 9/29 at 76, lines 20-21) ("... given the waivers that have occurred in prior proceedings with prior counsel ..."). Without a more substantial record, it is impossible for this Court to determine whether or not any waiver was given by any of the Appellants, or, if such a waiver was given, if it was limited to any extent. Therefore, the Court holds that the record transmitted by the Appellants is insubstantial and insufficient to pass on the issue of whether or not Appellants did or did not waive their rights to object to the appointment of Mr. Heal as the Intervenor's permanent limited guardian.

### V

### Conclusion

*9 Based on the foregoing analysis, it is clear that the Appellants have not in good faith submitted a substantial or sufficient record, as the Court is unable to meaningfully review the majority of the issues raised by the Appellants. The Intervenor has more than "raised the specter" of an incomplete record, as the Appellants suggest. Indeed, the Intervenor has indicated precisely where he believes the record is lacking regarding each of the Appellants' reasons for appeal, going so far as to quote passages of documents and transcripts not filed. Moreover and more tellingly, the record which the Appellants have transmitted clearly shows that additional portions of the record would be necessary for this Court to pass on a majority of the reasons for appeal stated by the Appellants.

The relevant portions of the voluminous record compiled by the Probate Court have not been presented substantially, and this insufficiency is fatal to four of the five reasons for appeal given by the Appellants. Even if the Court were able to reach the issue of recusal, the insufficient record in totality would not allow the Court to pass on the remaining issues raised by the Appellants. The Intervenor and the record on appeal indicate that these issues were the subject of numerous hearings, explored in countless hours of depositions, and given flesh in the form of hundreds of pages of documentary exhibits, of which the Appellants only transmitted the merest fraction to this Court pursuant to § 33-23-1. Where Appellants would raise genuine issues of material fact, it would be necessary for the Court to address the events, circumstances and evidence presented in the Probate Court proceedings, a record the Appellants have failed to timely file along with their appeal. Therefore, pursuant to § 33-23-1, this Court does not have jurisdiction to hear the Appellants' appeals, and the Intervenor's Motion to Dismiss is granted.

Counsel shall submit the appropriate Order for Entry.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

R.I.Super.,2006.
In re Estate of Griggs
Not Reported in A.2d, 2006 WL 3720309 (R.I.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.