UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Christine Peabody; Michael Griggs;
Lauren Griggs; and C. Monica Griggs

Plaintiffs

vs. C.A. No.: 08-243 ML

Carol Rita Kimberly Griggs, Alias;
David Heal, Alias, individually and
in his capacity as purported Trustee of
the Irrevocable Trust estate of the late Glenn E. Griggs;
Deborah Griggs, Alias; Dan A. Griggs, Alias;
Edward L. Gerstein, Alias; Richard Bicki, Alias;
Edward Brayton, Alias; the Griggs & Browne Co, Incorporated;
Griggs & Browne Home Inspection Service, Inc.;
Griggs & Browne Services, Inc.;
Griggs & Browne Termite Control, Inc; John Does l
through 10; Jane Roes 1 through 10; XYZ Corporations,
Partnerships, Limited Liability Companies, Trusts and/or
Enterprises 1 through 10

Defendants

**MEMORANDUM SUPPORTING PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS DAVID HEAL, EDWARD L. GERSTEIN AND RICHARD BICKI FOR JUDICIAL NOTICE PURSUANT TO F.R. Ev. 201 AND FOR "OTHER APPROPRIATE RELIEF"**

Defendants David Heal, Edward L. Gerstein and Richard Bicki ("Defendants") have filed a motion for judicial notice and for "Other Appropriate Relief." In doing so, Defendants broadly ask this Court to take judicial notice of every document filed in two state court actions. They assert that the documents (which include numerous depositions and discovery responses) are relevant to their allegedly forthcoming motion to dismiss on res judicata, collateral estoppel and *Rooker-Feldman* grounds. It appears that the "other appropriate relief" sought is the affirmation (whether express or implied) that, by taking judicial notice of certain documents, this Court will

not rely upon Defendants' use of such documents to convert their not-yet-filed motion to dismiss into one for summary judgment. Defendants, however, do not state for what purpose they intend to use <u>any</u> of the documents listed on the 13-pages attached to their motion. Absent such an explanation, an order of judicial notice is premature (except, perhaps, if limited to an order that the court, <u>upon</u> <u>authentication</u>, will take notice only of the fact that the listed documents exist). For these reasons, and for the reason set forth below, Plaintiff's object to the motion and request that it be denied.

## <u>SUMMARY OF THE LAW</u>

Plaintiffs do not dispute that public records, including those of judicial proceedings, *may* be subject to judicial notice.[1] However – and as defendants candidly admit – the purposes of judicial notice are limited. Judicial notice may be used to acknowledge the existence of the documents, and the <u>existence</u> (but not the <u>truth</u>) of their contents. In other words, upon proper authentication, the Court can acknowledge that certain public records exist, and that they say certain things. See *Hennessy v. Penril Datacomm Networks, Inc*., 69 F.3d 1344, 1354-55 (7th Cir.1995) (holding that the district court properly refused to take judicial notice of a corporation's Form 10-K to determine a fact in dispute-the number of corporate employees); *Lovelace v. Software Spectrum Inc*. 78 F.3d 1015, 1018 (5th Cir., 1996) (documents required to be filed with

[1] Plaintiffs do note, however, that several of the decisions relied upon by defendants are inapposite and, thus, do not provide good support for their position. For example, in the cases of *Trans-Spec Truck Service, Inc. v. Caterpillar Inc*.,524 F.3d 315 (1st Cir., 2008) and *Roy v. General Electric Co.*, 544 F.Supp.2d 103 (D.R.I. 2008) the courts invoked the rule that "[e]xhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)," *Trans-Spec,* 524 F3d at at 321, and that even if documents are not attached to the complaint, they may be submitted in support of a motion to dismiss if the "complaint's factual allegations are <u>expressly</u> linked to - and admittedly <u>dependent</u> <u>upon</u> - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Id.* In the matter now before the Court, however, virtually none of the documents listed in the defendants' 13-page list of documents are expressly linked to the allegations of the complaint, nor is the complaint dependent upon them.

the SEC, and actually filed with the SEC, are public documents susceptible to judicial notice. However, on motion to dismiss, "such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"); *Kramer v. Time Warner Inc*. 937 F.2d 767, 774 (2nd Cir., 1991) ("courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"); *United States v. Walters*, 510 F.2d 887, 890 n. 4 (3d Cir.1975) (on review of denial of habeas corpus, judicial notice of briefs and petitions filed in state courts to determine whether petitioner had exhausted his state remedies). Thus, the Court in *D'Amario v. Butler Hosp*. 921 F.2d 8, 10 (1st Cir., 1990) took judicial notice of a state court's denial of a motion for relief from judgment, as well as the reasons *stated by the judge*, to determine if the case before it should be dismissed on res judicata grounds. *Id*. at 10 (relying on E. *I. DuPont de Nemours & Co. v. Cullen*, 791 F.2d 5 (1st Cir.1986), and cases cited therein). If the mere existence of the document has legal effect, it might be appropriately noticed for purposes of a Rule 12(b)(6) motion to dismiss. However, the Court cannot also take judicial notice of the truth of what is said, or is contained, in such documents.[2]

[2] Lest it be misleading, the defendants' brief reference to *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group*, 181 F.3d 410 (3d Cir. 1999), deserves some attention. Defendants' cite that case as support for the proposition that a judicially noticed documents may be "examined to determine if it contradicts not only legal conclusions but also plaintiff's factual claims." The Third Circuit in *Southern Cross* was confronted with another court's opinion. The Court stated that "on a motion to dismiss, we may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion." *Id*. at 426 (citations omitted) (emphasis added). However, the existence of the opinion itself could contradict the plaintiff's claims *as a matter of law*. In that case, the issue was whether the plaintiff's claim was barred by the statute of limitations because it had notice of an alleged fraud. The Third Circuit Court of Appeals held that the other court's opinion itself (without regard to the truth of any matter contained therein) provided the plaintiff's with notice of a potential claim and, therefore, began the statutory period. *Id*. at 428-29.

## ARGUMENT

## I. GRIGGS I

As an example of how defendants' request is both premature and improper, the Plaintiff's refer the Court to the case of "Griggs I."

"Griggs I," as it shall be called for ease of reference consisted of three proceedings beginning with *In re Estate of Glenn Griggs* (Warwick Probate Court No. 2000-418), which commenced on October 10, 2000, when Lauren and Christine Griggs filed a guardianship petition to protect their father's (Glenn's) person. At that time, it was clear that Glenn was suffering from some form of dementia and memory loss. Afraid to cause their ailing father more distress and anxiety – as is often suffered by those whose mental acuity is degrading – they brought their father to Dr. Stoukides, a well-experienced and respected physician. Dr. Stoukides and his nurse, Sharon Murray combined to perform a thorough exam. Dr. Stoukides' portion of the exam was performed in a parking lot *because Glenn had a broken foot* and could not ambulate well. Thereafter, relying upon this DMAT, Glenn's daughters petitioned for guardianship.

Despite Glenn's mental ailments, Attorney Edward Gerstein entered his appearance as counsel for Glenn, even purporting to have been hired by Glenn. [3] (Yet, "Glenn's" attorney was seen to have conversations with Carol Griggs[4] and, in fact, intentionally excluded Glenn from them).

---

[3] It is submitted that Defendants have seemingly acknowledged Glenn's dementia at that time stating repeatedly that Glenn was, somehow, not even aware that he was being "'examined' at all."

[4] As stated in Plaintiffs' Verified Complaint, Carol Griggs was legally married to Glenn for approximately one year, although they lived together for only about a month before separating. Pursuant to the final judgment of divorce, Carol specifically asked for and received permission to resume the use of the surname "Kimberly." However, she utilized the name "Griggs" freely and often following the divorce, since it was conducive to her scheme.

Pursuant to R.I.G.L. §33-15-47, an "independent" guardian *ad litem* was appointed to assess Glenn's circumstances. The GAL reported that defendants Gerstein and Deborah Griggs were present during this encounter with Glenn. (*See GAL Report*, attached hereto as **Exhibit A**). The GAL noted several concerning points, including the fact that <u>Glenn could not remember the names of his own daughters, or the name of his doctor</u>. *Id*. The GAL also observed and reported that Glenn had difficulty communicating, but since the GAL had been assured (by either Gerstein or Deborah, it appears) that Glenn had a speech impairment, the GAL was reluctant to draw a conclusion as to whether his difficulties were the product of a speech or, instead, a mental impairment. *Id*. Moreover, some of the most important information was provided to the GAL not by Glenn – as would be expected if he was truly competent and aware of the import of the guardianship proceedings – but by defendant Gerstein, who alerted the GAL to the existence of financial planning documents. *Id*. Ultimately, the GAL concluded that he could not make a determination whether a guardian was needed absent further medical inquiry. *Id*. Thus, defendants hired Dr. Carlo Brogna, a consulting neurologist, who submitted a DMAT for *in camera* review.

The defendants' attorneys (including defendant Gerstein) obviously wanted to delay what must have appeared to be inevitable, to wit, a decision in favor of the petitioners, Glenn's loving family. Thus, they dragged the case on by discovery and objections to the probate petitioners' requests for discovery. This discovery served no purpose and, eventually, Probate Judge Evangelista ultimately decided the "case in this Court's opinion [had] gone on far too long. *In Re: Estate of Glenn E. Griggs*, Probate Ct. Docket No. 2000-418 (June 21, 2001) at 13:10-17. (*Attached hereto as* **Exhibit B**).

Rejecting the persistent requests by the defendants not to consider any opposing opinions other than those presented by *their chosen* doctor (Brogna), Probate Court Judge Evangelista expressly found Dr. Stoukides' DMAT to be credible and his procedures to be of a type "routinely were used in guardianship matters." *Id*. at 4:10-20. Nevertheless, Judge Evangelista determined that since a dispute existed between Dr. Stoukides and the defendants' chosen Dr. Brogna, a neurologist, and since there were financial planning documents that would provide a less restrictive alternative to guardianship, she would deny the petition.[5] *Id*. at 7:22 – 9:12.

Judge Evangelista denied the guardianship petition in Griggs I on June 21, 2001. In so doing, she did not make a determination that Glenn was competent (nor that he was not susceptible to undue influence of those claiming to be his professionals). Instead, she expressly stressed that she was skirting the issue because there were financial documents in place and that "this case needs to be resolved," *id*. at 11:2-12, because it had "gone on far too long." *Id*. at 13:10-17.

Judge Evangelista also did not address the validity of Glenn's financial documents (such as whether they were procured by fraud or undue influence). Instead, she properly determined that a Probate Court was the wrong place to adjudicate such issues.[6] Lest someone suggest otherwise, Judge Evangelista expressly stated that she did not believe that the issue was properly before her. She stated that:

> As far as the powers of attorney which Mr. Griggs signed, I think once those documents are utilized, they will become, in a sense, public documents because the powers of attorney whether at a bank or a brokerage house, has to reveal who he or she is, but this case in this Court's opinion has gone on far too long.

*id*. at 13:10-17, and that,

---

[5] Judge Evangelista did not rely upon the report of the appointed Guardian *ad litem* (the "GAL"), because the GAL had reported that he could not conclusively determine whether Glenn needed a guardian.

[6] *See infra*., f.n. 7.

> If you're going to start arguing about the estate-planning documents, as you know, this is not the forum to question the execution of powers of attorney and revocable trusts, because he is alive. The will is not something that we would obviously get into.

*Id*. at 14:1 -6.

Following the Probate Court's decision, petitioners Lauren and Christine appealed *de novo* to the Kent County Superior Court. Although it was alleged that Glenn lacked decision-making abilities and was the victim of "undue influence," the appeal was denied. However, the Superior Court did not address the merits or make findings of fact. Rather, Justice Netti C. Vogel determined that because a DMAT from Glenn's *treating* physician had not been submitted, the guardianship petition was not properly before either the Probate or Superior Court. *See Griggs v. Estate of Glenn E.* Griggs, 845 A.2d 1006, 1009 (R.I. 2004). An appeal taken to the Rhode Island Supreme Court was denied for procedural reasons as well, to wit, that the appeal to the Superior Court was not properly perfected. *Id.*

After all is said and done, it is clear that two alternative contentions may be made: first, that all orders of the Probate Court were void because the petition was not properly before the Court (as Justice Vogel determined) or, second, because of an improperly perfected Superior Court appeal, Judge Evangelista's ruling stands. However, one thing is clear: neither Judge Evangelista, Justice Vogel, nor the R.I. Supreme Court undertook to determine Glenn's competency or the validity of his financial planning documents. None of the Courts in Griggs I undertook to determine the issue of undue influence, or a myriad of other issues raised in the Plaintiff's Complaint before this Court.

After examining the Probate Court's final decision in Griggs I, and the decisions on appeal, it becomes quite clear that there are no proper reasons for this Court to take judicial

notice of all of the documents filed in the Griggs I litigation. While certainly public documents, the discovery and deposition transcripts produced during these proceedings are irrelevant to the issue of collateral estoppel, *res judicata*, or Rooker-Feldman (certainly, defendants have yet to propose why they would be relevant). Simply put, while the petitioners in Griggs I (including some but not all of the plaintiffs before this Court) might have asserted that Glenn needed a guardian because he was subject to undue influence, and while they may have inquired into the validity of Glenn's so-called the financial planning documents, for example, neither of these issues were either expressly or impliedly decided by Probate Judge Evangelista. Judge Evangelista expressly stated that she was not deciding these issues. (The issues were also not decided by the Superior Court or Supreme Court on appeal, both of which dismissed the appeals for procedural reasons). Furthermore, the relief sought in this Court is substantially different than the relief sought in the Probate Court (i.e., appointment of a guardian for Glenn Griggs). And, in light of the Probate Court's limited jurisdiction,[7] which Judge Evangelista recognized, it could not have entertained the claims now before this Court, or granted the relief sought in this civil action.

## II. GRIGGS II

Similar issues abound with respect to the litigation referred to as "Griggs II." That began on June 26, 2003, while the appeal in Griggs I was pending in the Rhode Island Supreme Court, when Dan Griggs filed an emergency petition for the appointment of a temporary limited

[7] It is well-established in Rhode Island that "probate courts are 'of special and limited jurisdiction ... exercis[ing] ... jurisdiction only in a manner and to the extent conferred by statute.'" *Carr v. Prader*, 725 A.2d 291, 293 (R.I. 1999) (quoting *Harrop v. Tillinghast*, 195 A. 226, 228 (1937)). Consequently, the probate courts of this state possess no powers beyond those specifically delineated by statute, to wit, R.I. Gen. Laws §8-9-9.

guardian and/or guardian of the "person" of Glenn, In re Estate of Glenn E. Griggs. ("Griggs II").

Ultimately, after yet more protracted litigation, the Warwick Probate Court (Earle, J.) recognized that Glenn was not fully competent and appointed Attorney Michael St. Pierre as the temporary limited guardian of Glenn's "person," with authority to determine who would have access to Glenn during the proceedings. Attorney St. Pierre retained that authority until Glenn's death in December 2007. Probate Judge Earle also appointed Mr. David Heal as the limited guardian of the portion of Glenn's estate subject to probate court jurisdiction. (The bulk of Glenn's assets had been transferred to his Trust, the validity of which the Probate Court in *Griggs I* expressly refused to address).

It is difficult, if not impossible, to determine for what issues the defendants would seek judicial notice. (Except, perhaps, to show that Glenn was incompetent in June 2003 and, thus, for some period of time prior to that, despite the fact that his signatures appeared on Griggs & Browne's annual reports from 2000 through February, 2003, as part of a plan to make it appear that he was competent, running the businesses, and not under undue influence). The mere appointment of a guardian does not validate every action he subsequently undertakes. Moreover, the appointment of a guardian does not create an inference or presumption that the guardian was not affected by the defendants' fraudulent acts (including concealment).[8]

[8] It is reminded that Attorney St. Pierre is not a defendant in this action. Rather, it is alleged that St. Pierre "was evidently misled about plaintiffs from the first moment of his appointment, and with these repeated misrepresentations directed to him, failed to investigate or to properly investigate these allegations and caused plaintiffs much unwarranted and unnecessary anguish and grief, by evidently believing in the honesty of Gerstein, Carol and Myers and that these strangers with so many conniving persons among their ranks were better able to care for Glenn than his own family." *Complaint*, at ¶252.

## CONCLUSION

Defendants broadly ask this Court to take judicial notice of every document filed in two state court actions and to affirm that such judicial notice will prevent the conversion of defendants' not-yet-filed motion to dismiss into a motion for summary judgment. Defendants, however, do not state for what purpose they intend to use any of the documents listed on the 13-pages attached to their motion. (A search of the Federal Rules Decision reporter for similar motions to take judicial notice of other proceedings suggests that no such broad motion – unrelated to a filed motion to dismiss or for summary judgment and, indeed, in a vacuum – has ever been granted).

Based upon the foregoing, Plaintiffs submit that this Court should thus DENY defendants' request. It would, indeed, be an exercise in futility to simply take judicial notice that the documents exist and, without more, this Court cannot determine whether the defendants' will make a use of the documents for which judicial notice is not appropriate (such as the truth of matters asserted in depositions or in attorney in-court statements).

Respectfully Submitted,
Plaintiffs,
By their attorney,

/s/ John B. Reilly

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, RI 02903
tel.: (401) 272-2800
fax: (401) 272-2811

**CERTIFICATION**

I hereby certify that on the 29 th day of August, 2008, a true copy of the within document has been filed through the ECF system and will be sent electronically to the following registered participants as identified on the Notice of Electronic Filing (NEF).

Stacey P. Nakasian, Esq.
Duffy, Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
snakasian@duffysweeney.com

Michael J. Lepizzera, Jr., Esq.
Lepizzera & Laprocina Counsellors at Law, Ltd.
117 Metro Center Boulevard, Suite 2001
Warwick, RI 02886
mlepizzera@lldlawyers.com

Anthony M. Traini, Esq.
56 Pine Street
Providence, RI 02903
amt@atrainilaw.com

Richard C. Bicki, Esq.
56 Pine Street, Suite 200
Providence, RI 02903
rbickiesq@aol.com

Edward L. Gerstein, Esq.
29 Meeting House Lane
Little Compton, RI 02837
elg@zomolo.com

Melody A. Alger
Baluch, Gianfrancesco, Mathieu & Alger
155 South Main Street, Suite 101
Providence, RI 02903
melody.alger@bgmalaw.com

Joseph J. Altieri
Joseph J. Altieri, Ltd.
350 South Main Street
Providence, RI 02903
JoeAltieri@JJALTD.com

David Jesse Oliveira
David Oliveira, Esq.
155 South Main Street
Suite 305
Providence, RI 02903
doliveira@djolaw.com

Craig M. Scott
Duffy Sweeney & Scott, Ltd.
One Turks Head Place
Suite 1200
Providence, RI 02903
cscott@duffysweeney.com

It is also hereby certified that a true copy of the within will be sent by first-class mail, postage prepaid on this 29_th day of August, 2008 to the following defendants who have been served with process at their last known address.

Edward Brayton
1357 Wampanoag Trail, Apt. 335
Riverside, RI 02915

____/s/ John B. Reilly____________