# EXHIBIT B

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
KENT, SC. WARWICK PROBATE COURT

COPY

IN RE: :
:
ESTATE OF GLENN E. GRIGGS :DOCKET NO. 2000-418

---

Hearing before the HONORABLE RENEE EVANGELISTA, Warwick Probate Judge, on Thursday, June 21, 2001 at 9:30 A.M. at the Warwick Probate Court, 3275 Post Road, Warwick, Rhode Island, before Sally Brassard, Certified Shorthand Reporter.

Vivian S. Dafoulas & Associates
465 Stone Ridge Drive
East Greenwich, RI 02818
(401) 885-0992

APPEARANCES:

FOR THE PETITIONER:

MARVIN HOMONOFF, ESQUIRE
369 SOUTH MAIN STREET
PROVIDENCE, RI 02903

FOR THE RESPONDENT:

EDWARD L. GERSTEIN, ESQUIRE
29 MEETING HOUSE LANE
LITTLE COMPTON, RI 02837

LAUREN JONES, ESQUIRE
72 SOUTH MAIN STREET
PROVIDENCE, RI 02903

FOR DEBORAH GRIGGS:

RICHARD BICKI, ESQUIRE
56 PINE STREET
PROVIDENCE, RI 02903

FOR DR. STOUKIDES AND ROGER WILLIAMS HOSPITAL

LEWIS J. PARAS, ESQUIRE
797 BALD HILL ROAD
WARWICK, RI 02886

JUDGE EVANGELISTA: We're on the
Today is Thursday, June 21st, 2001. We're regarding the guardianship petition filed by Christine Peabody and Lauren Griggs for guardianship over their father, Glenn Griggs. Would everyone please state their name and who they represent for the record.

MR. BICKI: Richard Bicki on behalf of Deborah Griggs.

MR. GERSTEIN: Edward Gerstein on behalf of Glenn Griggs.

MR. JONES: Lauren Jones with Ed Gerstein.

MR. HOMONOFF: I represent both Christine Peabody and Lauren Griggs.

MR. PARAS: Lewis J. Paras. I'm with Joseph McGair's office who represents Roger Williams Hospital.

JUDGE EVANGELISTA: Okay. Your partner had originally filed a letter asking us to continue.

MR. PARAS: That's correct. He was Court excused.

JUDGE EVANGELISTA: The Court has had a chance to review the deposition of Carol Kimberly and Dr. Stoukides and at this point the Court is

ready to make a decision on the guardianship petition. I would first like to address several of the other petitions that have been filed with the Court. The first petition I would like to address is the petition or the motion which Mr. Gerstein had filed to strike the DMAT. At this time the Court is going to deny that motion.

Having reviewed Dr. Stoukides' deposition, the Court does not believe that the DMAT was obtained fraudulently. The Court is of the opinion that the procedures which Dr. Stoukides used, particularly working with Ms. Murray, were procedures which routinely were used in guardianship matters. The Rhode Island statute regarding guardianship allows other professionals, such as Ms. Murray, to assist in the physician's dealing with the prospective ward. Dr. Stoukides is someone who has a lot of experience in the area of conducting assessments of an individual's capacity to make decisions, as was indicated in the deposition. He and his team prepare hundreds of assessments a year for guardianship matters.

The Court would like to make clear though, for the record, that it was concerned with the fact that the exam was done in an automobile. I

think that that sets, or creates, an impression that perhaps the assessment was rushed. But, again, because of Dr. Stoukides' experience -- he's got twelve years of medical experience -- and primarily because of the fact that he focuses in this area, the Court is not of the opinion that because it occurred in an automobile that the DMAT should be thrown out.

However, the Court would like to make it clear that this is something that just creates an uncomfortable impression: particularly when they're considering someone's abilities to make decisions to be taken away from them, their abilities to make decisions. The fact also that he spent fifteen to thirty minutes initially struck the Court as not enough of a period of time to make a valid assessment. But, again, given the fact that it was a physician who has quite a bit of experience in this area and the fact that he was working with his assistant, Ms. Murray, who also has over ten years of working with him on these types of matters, the Court was not inclined to throw out the DMAT just because of the length of time of the examination.

As far as the petition to take the

deposition of Sharon Murray, the Court is going to deny that petition. It doesn't feel that it's necessary.

With respect to the issue that came up regarding the consents which Mr. Griggs signed concerning certain medical reports and labs being released, the Court is going to allow copies of those consents to be given to Mr. Gerstein only. The reason that they're going to be given to Mr. Gerstein only is directly related to the Court's decision with respect to the guardianship petition.

When the guardianship petition was filed, Mr. Kilguss was appointed guardian ad litem. In Mr. Kilguss' report he indicated that while Mr. Griggs had trouble remembering his children's names and the name of his doctor, he couldn't say for certain whether or not Mr. Griggs needed a guardian. He was not sure. He discussed the fact that Mr. Griggs appeared to have difficulty speaking and articulating his words, but that he was not sure that that, in fact, meant that he needs a guardian.

He indicated at that time, and it's in the guardian ad litem's report, that Mr. Griggs did

have other estate-planning documents in place which would be available to be used if, in fact, he did have difficulty making financial, medical, or other decisions. And that those documents should be considered so that less restrictive means could be put into place as opposed to a full guardianship.

This Court has always taken the position that at a first glance of Dr. Stoukides' decision-making assessment tool, it would appear that he needs a guardian, but that if there are less restrictive means in place, those means should be given significant weight because the Court does not like to appoint a guardian for someone if it is not absolutely necessary. But getting back to Dr. Stoukides' decision-making assessment tool, Mr. Gerstein has always taken the position that his client did not need a guardian. As I mentioned, Mr. Kilguss in his guardian ad litem report was unsure as to whether or not a guardian was needed for Mr. Griggs.

This Court ordered an affidavit be prepared by Dr. Brogna, a neurologist for Mr. Griggs, which the Court kept under seal and did not give copies of that affidavit to Mr. Homonoff

or Mr. Bicki. However, the Court has decided, particularly because I'm deciding on the guardianship petition, that it is going to allow copies of the affidavit prepared by Dr. Brogna to be given to Mr. Homonoff and Mr. Bicki, but not to be given to any other parties at this time. Since that affidavit sets forth Dr. Brogna's assessment of Mr. Griggs that, in fact, while he may have trouble articulating his words and while he may have some signs of perhaps the start of some type of dementia, that at this point in time he does not appear to need a guardian and it goes against the assessment of Dr. Stoukides. So what the Court has decided is that it is not going to throw out Dr. Stoukides' decision-making assessment tool. It is going to allow the affidavit of Dr. Brogna to be distributed to Mr. Homonoff and Mr. Bicki.

After a review of Mr. Griggs' estate-planning documents which he has in place, which this Court requested because on the petition for guardianship the petitioner has indicated that they were unclear as to whether or not there were any estate-planning documents in place, and they were very honest about the fact that they did not

know about his assets. Because it became clear to the Court that there were estate-planning documents in place, as indicated in Mr. Kilguss' guardian ad litem report, and after looking at those documents, the Court was of the opinion that those less restrictive means should be utilized unless for some reason there is a problem with the people named in the documents, or they are changed by Mr. Griggs, or some other situation. But the Court feels as though people sign trusts and powers of attorney to avoid guardianship situations.

However, again, I want to stress that the Court is in a position right now where it has not even determined that Mr. Griggs needs a guardian because we have two different assessments, if you will. Even if it were determined that he were incompetent, the Court would place significant weight on the less restrictive means, the estate-planning documents that Mr. Griggs set up, because I think all of us who deal with estate plans realize that those documents are set up to avoid guardianship situations. So, at this time I'm going to deny the petition for guardianship, and we will prepare an order to that effect and