circulate it to all the parties.

MR. HOMONOFF: Your Honor, with respect to the ruling this morning. I'd just like to put for the record that it was my understanding that today's hearing was not a hearing on the so-called merits of the case, but that Your Honor would want an opportunity to see the ward, respondent ward, and to talk with the respondent ward in person. I think that that was my understanding and that today's hearing was a so-called status conference, and even by virtue of Mr. McGair's letter to you that he felt that the issue before the Court today was the question of Sharon Murray's deposition. That it wasn't a question of the hearing on the merits today.

JUDGE EVANGELISTA: No. I would disagree with that because I think at the last meeting we talked about the fact that if I was able to see Dr. Stoukides' deposition, I could certainly make a decision about whether or not I wanted to have Sharon Murray's deposition taken, but that I could also, perhaps rule on this case. For the last six or seven months, we've been waiting to see Dr. Stoukides' deposition because Mr. Gerstein has taken the position that the DMAT was prepared

fraudulently. This Court does not agree with that allegation. Although, this Court, after reviewing the deposition, felt as though Dr. Stoukides prepared the DMAT in, generally speaking, an appropriate manner, the fact that there is the affidavit of Dr. Brogna -- which will be turned over to you -- just led the Court to make a decision that this case needs to be resolved. And, even if he is determined to be lacking decision-making abilities, the estate-planning document in place is of less restrictive means, which this Court prefers to give significant weight to, to avoid a guardian.

MR HOMONOFF: If I could address those points one at a time, Judge.

JUDGE EVANGELISTA: Yes.

MR. HOMONOFF: Dr. Brogna, we have reason to believe, was retained subsequent to the filing of the guardianship petition. Clearly, his affidavit was prepared subsequent to the filing of the guardianship petition. So that if, in fact, the Court is relying on a neurologist's report, then the petitioners should have ample opportunity to have a neurologist review that to see if his findings conform to Dr. Brogna's findings.

Putting the issue of that guardianship, the medical issue, aside, with respect to Your Honor's feelings regarding these trusts and powers of attorney, we still don't know the dates of these powers of attorney, we don't know the circumstances regarding the execution of these powers of attorney. The Court has found basically that the Court believes Dr. Stoukides and that it wasn't prepared fraudulently.

JUDGE EVANGELISTA: Right.

MR. HOMONOFF: And the Court has indicated that he's a physician of long experience and repute in the community. Therefore, how can we in any way confront the issue of the trust and powers of attorney if we haven't had an opportunity to review them?

JUDGE EVANGELISTA: Well, first of all, I think that Dr. Brogna, even though he examined, if he did examine Mr. Griggs after the fact, it was still an examination of Mr. Griggs. And when you read the affidavit, it is a very thorough assessment of his medical condition. I think that when you see that, you'll see why the Court is of the opinion that Mr. Griggs' competency in terms of decision-making ability is in question. Mr.

Kilguss, the guardian ad litem, from t' beginning had questions and doubts a' guardian was even needed.

In terms of the estate-planning documen I think as a general rule, particularly with the trusts for example, they are private documents that people establish because they want to keep their financial and personal matters private and out of the Court, and that's one of the main reasons people set them up. As far as the powers of attorney which Mr. Griggs signed, I think once those documents are utilized, they will become, in a sense, public documents because the powers of attorney, whoever is acting as his power of attorney whether at a bank or a brokerage house, has to reveal who he or she is, but this case in this Court's opinion has gone on far too long.

I am not saying that it's your fault or Mr. Gerstein's fault. The evidence in this Court's opinion, with Dr. Brogna's affidavit and going back to Mr. Kilguss' guardian ad litem report, is that there is an issue about his competency. Once we set that aside, even if he is found to be incompetent, the Court gives considerable weight to the estate-planning

document. If you're going to start arguing about the estate-planning documents, as you know, this is not the forum to question the execution of powers of attorney and revocable trusts, because he is alive. The will is not something that we would obviously get into.

MR. HOMONOFF: If I may, Your Honor, on that same line however, Your Honor would agree that it is a forum to inquire as to the well-being of Glenn Griggs and that there is also a petition for guardianship of the person, and that hasn't been addressed by this Court. This man is living alone, and I would strongly urge this Court to give us an opportunity to have him come before the Court so that Your Honor may, with her own two eyes, see Mr. Griggs and inquire of Mr. Griggs with respect to that issue. Now, these documents you've discussed are basically financial planning documents, trusts, et cetera.

JUDGE EVANGELISTA: With respect to health care.

MR. HOMONOFF: No. We're concerned with the well-being of a man who, by agreement of the parties, is living alone.

JUDGE EVANGELISTA: And you're concerned

that he's living alone --

MR. HOMONOFF: And that condition creates a danger to himself. Witness the fact that he has, as the Court is aware of, an accident where he had a broken leg and had to be transported to various physicians and doctors. If something like that happens tomorrow, I feel that the Court --

JUDGE EVANGELISTA: Well, he does have a medical power of attorney.

MR. HOMONOFF: Well, I understand that, but that's a very limited power of attorney. The medical power of attorney is not a full guardianship of the person. I see no harm, in fact the Court has spent a lot of time in this case and I truly appreciate it and my clients appreciate it, but it would seem to me that you would need to see and inquire of him and take maybe some testimony from him. That's what we're here about. We're here about Glenn Griggs in order to make a full and complete decision on the case, and I respectfully request that you continue the matter for an opportunity to do so.

JUDGE EVANGELISTA: I'm not going to do that and I think you can, obviously, appeal my decision and proceed in the Superior Court. Based

on the situation and what I've read about Mr. Griggs as far as him needing a guardian over his person right now, the Court is not convinced that he does. If he in fact does, it seems to me at this point with the medical power of attorney, which would give them the ability to place him in a nursing home or an assisted living facility, particularly with his broken foot, that that would suffice. If in fact, as you've seen cases like this where something comes up and the powers of attorney are not sufficient, this Court has in the past solely appointed a person to serve as the guardian over the person. In those cases, many times we've looked at who did the guardian name and his powers of attorney; we tend to name that person and have them answer to the Court. The people named in his powers of attorney are not Christine Peabody and Lauren Griggs, I will say that. Not to say that they can't petition for the guardian of the person, but at this point that's the Court's decision.

MR. HOMONOFF: I will assume that the Court's order is that the affidavit of Dr. Brogna --

JUDGE EVANGELISTA: Charlene will make a

copy.

MR. GERSTEIN: Very briefly, Judge, I'd like to, for the purposes of the record, impose an objection to the disclosure of the Brogna affidavit to Mr. Homonoff and Mr. Bicki. It seems to me that the disclosure at this point serves no useful purpose. If, in fact, Mr. Homonoff wants to appeal your decision, he can seek to have the Superior Court order this.

JUDGE EVANGELISTA: Well, this Court disagrees because I am relying on that in my decision.

MR. GERSTEIN: I would just ask that Mr. Homonoff -- you indicated it was not going to be disclosed to any other parties -- that it doesn't show up in any proceedings.

JUDGE EVANGELISTA: Right. It's not to be disseminated and Mr. Homonoff knows that.

MR. GERSTEIN: And that's not to be disseminated to the Court; correct?

JUDGE EVANGELISTA: It's not to be disseminated, but it will be part of the record as far as this Court's findings so that on appeal it would go to the Superior Court.

MR. HOMONOFF: Well, obviously if I

haven't, my co-counsel, Mr. Sjoberg, has a right to look at it and my clients have a right to look at it.

JUDGE EVANGELISTA: That's right, your clients do as well, that's right.

MR. GERSTEIN: Thank you.

MR. BICKI: Thank you, Your Honor.

(Hearing adjourned at 10:15 a.m.)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
PROVIDENCE, SC.

I do hereby certify that I am expressly approved as a person qualified and authorized to take depositions pursuant to the Rules of Civil Procedure of this Court, especially, but without restriction thereto, under Rule 30 (e) of said Rules; that the witness was first sworn by me; that the transcript contains a true record of the proceedings.

I further certify that neither the deponent nor any party requested a review of the transcript.

IN WITNESS WHEREOF I have hereunto set my hand this 21st day of June, 2001.

Sally Brassard
SALLY BRASSARD, CSR/RPR
SHORTHAND REPORTER