UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Christine Peabody; Michael Griggs;
Lauren Griggs; and C. Monica Griggs

Plaintiffs

vs. C.A. No.: 08-243 ML

Carol Rita Kimberly Griggs, Alias;
David Heal, Alias, individually and
in his capacity as purported Trustee of
the Irrevocable Trust estate of the late Glenn E. Griggs;
Deborah Griggs, Alias; Dan A. Griggs, Alias;
Edward L. Gerstein, Alias; Richard Bicki, Alias;
Edward Brayton, Alias; the Griggs & Browne Co, Incorporated;
Griggs & Browne Home Inspection Service, Inc.;
Griggs & Browne Services, Inc.;
Griggs & Browne Termite Control, Inc; John Does l
through 10; Jane Roes 1 through 10; XYZ Corporations,
Partnerships, Limited Liability Companies, Trusts and/or
Enterprises 1 through 10

Defendants

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO TAKE AND PERPETUATE TESTIMONY OF DAVID J. AUBIN**

Plaintiffs have moved, pursuant to Fed.R.Civ.P. 30(a)(2) and Fed.R.Civ.P. 26(d)(1), for leave to take and perpetuate the deposition of David J. Aubin (by standard stenographic means as well as by videotape). In support thereof, Plaintiffs have submitted that the requested relief comports with the policies under Fed.R.Civ.P. 26(b)(2), and taking the deposition now would not prejudice the parties but would, instead, result in conservation of resources and minimization of expense and inconvenience. Plaintiffs now submit this supplemental memorandum for the purposes of clarifying the need for the deposition, making an offer of proof, and addressing

arguments raised by Defendants Edward L. Gerstein and Richard Bicki. (Hereafter, "Defendants").

**The Emergency Basis to Depose David Aubin**

Mr. Aubin is a man of nearly eighty-one (81) years (dob DOB 11/13/1927). Mr. Aubin had serious surgery in 1992 and further serious surgery in 1995. Recently – just prior to his trip to Massachusetts – Mr. Aubin underwent a medical examination and has now been informed that his doctors are concerned that the condition that had hopefully been cured in 1992 may have recurred. They have advised that he should return to Florida for immediate testing and treatment (if necessary) since this condition can be life threatening. (All of this can be confirmed by Mr. Aubin at his deposition).

It is further noted, that Mr. Aubin has recently advised Plaintiff's counsel that, due to the need to undergo the aforementioned medical examination, his plans to return to Florida have been changed. He now plans to leave on **September 6, 2008**, although he is willing to try to extend that time by a few days if this motion is granted.

**Offer of Proof**

In further support of their motion, Plaintiffs make the following offer of proof (*based upon communications with Mr. Aubin which are protected by the attorney work-product rule*). Mr. Aubin is expected to testify to the following, without limitation:

> (1) At about the same time that Glenn Griggs' father initially brought Glenn into the first Griggs & Browne business, David J. Aubin, Jr. ("Aubin") was also hired to work at the company.
>
> (2) Mr. Aubin became a manager of the first Griggs & Browne Company and had a lengthy, uninterrupted career with the first company of approximately thirty (30) years' duration, retiring in December 1985.

(3) A written agreement of December 30, 1985, between Griggs & Browne and David Aubin included reciprocal promises by the first Griggs & Browne company that it would continue to pay Aubin's health insurance, provide Aubin a lifetime gas allowance, give Aubin the company car he (Aubin) was then using, and pay for Aubin's life insurance policy until Aubin attained the age of sixty-five (65) years.

(4) Aubin provided consulting services to Glenn and the Griggs & Browne companies until approximately 1999.

(5) Aubin undertook yearly golfing sojourns with Glenn and others that provided Aubin opportunities to observe his friend, Glenn's, physical and mental condition.

(6) Aubin is of the opinion that each year Glenn's memory became worse. While visiting Glenn on Post Road in Warwick (near the railroad tracks) Glenn showed Aubin a Will he said he had just made but was not going to sign because it contained the words "this is my <u>last</u> Will and Testament." This was in the late 1990's. Mr. Aubin felt this was indicative that Mr. Griggs' understanding and mental acuity was substantially deteriorated.

(7) While Glenn's divorce form Carol was pending, Aubin had a lunch with Glenn and Carol wherein Glenn stated that "I married her, but she never said she loved me." Carol responded that "I told you once." When Glenn asked "When?," Carol could not respond.

(8) After Glenn's divorce from Carol Griggs, Glenn met Aubin on a Friday for lunch or dinner in East Greenwich and Aubin convinced Glenn to go on another golfing trip.

(9) Matthew Tierney, a Griggs & Browne employee, accompanied Glenn to the luncheon and Aubin's impression was that Tierney was acting as some sort of "bodyguard." A company underling had never accompanied Glenn to previous meetings of this social type.

(10) At the end of the meal the check arrived and Aubin observed that Glenn's mental abilities had deteriorated so badly that he could not remember things they had done together, he could not add or calculate the tip and he asked Tierney to take care of the "tab."

(11) The New Hampshire trip was scheduled to depart on the following Monday morning, but when Aubin arrived, Edward Brayton (another Griggs & Browne employee) met him and advised Aubin that Glenn could not go and when Aubin inquired "why?" he was told that Aubin "did not need to know that stuff."

(12) Upon hearing this, Aubin went to Glenn's office, but Glenn was not there, whereupon Aubin became so disgusted that he removed his own picture from the "wall of fame" and left.

(13) In a letter to Aubin dated April 20, 1999, Aubin was unceremoniously advised by "Claudette" (a bookkeeper) that Michael Griggs was "no longer here (with the businesses)", that "Carol and Glenn" asked her to revoke Aubin's telephone bill payments, and that "Carol and Glenn" had "appointed David Heal to replace Michael."

(14) On May 14, 1999, "Claudette" sent another letter to Aubin, claiming that Aubin's longtime (over 40 year) friend, Glenn, wanted to have Aubin's health premiums and gas credit card payments stopped immediately. If Aubin had any questions he was to "call Glenn or Carol."

(15) Aubin called Glenn but Glenn denied any knowledge this had happened. The next time Aubin called, he got Carol who said that's what Glenn wants. Aubin advised he that he had a contract. She asked for a copy and Aubin and sent a copy of his December 30, 1985 agreement to the Griggs & Browne business offices so as to have his promises honored.

(16) During the late 1990s Glenn Griggs had trouble understanding financial documents and was not (as defendants have alleged) in control of the Griggs & Browne business.

(17) Mr. Aubin was not contacted by anyone with respect to the preparation of the medical affidavit by the doctor hired by defendants (Dr. Carlo Brogna) to contest the Petition for Guardianship filed by Glenn's daughter.[1]

## STANDARD OF REVIEW

The current trend in deciding motions for expedited discovery is to apply a more "flexible" "good cause" test. *See, e.g., Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc.* 213 F.R.D. 418, 419-20 (D.Colo.2003); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275 (N.D.Cal.2002); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y.2005). "As the Rules permit the Court to act by order, but do not elaborate on the

[1] Dr. Brogna's affidavit proclaims that he reviewed "historical information provided (to Dr. Brogna) that is a generally accepted element of the process", but none of this information came from and no contact was made with Plaintiffs or Glenn's former wives, former physician, friend Mr. Aubin, or others.

basis for taking action, it seems that the intention of the rule-maker was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent test." *Ayash*, 233 F.R.D. at 326. As one court has pointed out, "it makes sense to examine the discovery request ... on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 1*94 F.R.D. 618, 624 (N.D.Ill.2000). (emphasis in original).

## ARGUMENT

Plaintiffs' request to depose David Aubin is certainly reasonable. Mr. Aubin is an elderly man who, although not yet certain, might be inflicted with recurrent prostate cancer – an aggressive, debilitating, and often fatal disease. Furthermore, conducting the deposition now would relieve all parties of the need to travel to Florida at a later date and the attendant costs.[2] His testimony is relevant because, although he retired as manager from Griggs & Brown in 1985, he continued as a consultant until 1999 (as stated in the Complaint). Furthermore, he was a close friend of Glenn Griggs and is a material witness to the fact that Mr. Griggs's mental acuity was diminished – and, thus, his susceptibility to undue influence increased – prior to the time when defendants' gained control over him and began excluding him from his family as a means to further their scheme to divert his assets for the defendants' benefit.

[2] Defendants appear to have accused plaintiffs' counsel of champerty. *See Defendant's Opposition Memo* at f.n.7. Without any evidence whatsoever, and based upon fanciful speculation, defendants Gerstein and Bicki – by and through Attorney Traini – state that "plaintiffs are not footing their own bill" in this matter, thereby implying that Plaintiffs' counsel is being, and will in the future be, paid by a third party. This is an extravagant and offensive speculation that falls nothing short of repugnant to the rules of civility and professional responsibility that this Court requires attorneys to adhere to. This conduct – not plaintiffs' – is the stuff of Rule 11 sanctions. In fact, the Paul Gonya that defendants refer to has no involvement in this case whatsoever and has not made any payments – either directly or indirectly – to the plaintiffs' attorney. (An affidavit of counsel attesting to this fact can be submitted if the Court so desires). It is thus apparent that defendants will say whatever it takes to distract the Court's attention from the merits of the Complaint and the motion now before the Court. And, of course, they do not volunteer who pays their expenses.

Despite defendant's intimations to the contrary, the fact that no affidavit from Mr. Aubin was included in Plaintiff's complaint is irrelevant. As defendants are (or ought to be) aware, such an affidavit would not be admissible at trial should Mr. Aubin succumb to prostate cancer before then. In fact, however, defendants' objections that the allegations regarding Mr. Aubin are "upon information and belief" support granting a deposition at this time. Many courts have permitted early discovery in order to facilitate a proposed motion for injunctive relief, for example, or to counter a forthcoming motion to dismiss. *Cf. Sica v. Connecticut*, 331 F.Supp.2d 82 (D. Conn. 2004) (physician was entitled to conduct limited expedited discovery in effort to buttress claim that bad faith or extraordinary circumstances exception to *Younger* abstention applied to her request for preliminary injunctive relief enjoining ongoing state disciplinary proceedings); *OMG Fidelity, Inc. v. Sirius Technologies, Inc*., 239 F.R.D. 300 (N.D.N.Y.2006) (plaintiff's request for permission to proceed with expedited discovery at pre-answer stage would be granted, notwithstanding that parties had not met and conferred concerning discovery, and that defendant announced intention to file motion to dismiss).

Defendants' protestations that they intend to file a motion to dismiss are also unavailing.[3] In fact, the *OMG Fidelity* Court rejected the defendant's suggestion that a stringent test be

---

[3] Defendants state they will be filing a motion to dismiss, but, as of yet, have not done so. They simply ask this Court to trust that they will be successful. However, the fact that such trust would be misplaced is demonstrated simply by examining the defendants' motion for judicial notice. In that motion, defendants' ask this Court to take judicial notice of every document filed in two state court actions (and, also, to affirm that, by taking judicial notice of the documents, this Court will not rely upon Defendants' use of such documents to convert their not-yet-filed motion to dismiss into one for summary judgment).

Although Defendants do not state for what purpose(s) they intend to use any of the documents listed on the 13-pages attached to their motion for judicial notice, they assert that the documents (which include numerous depositions and discovery responses) are relevant to their allegedly forthcoming motion to dismiss on res judicata, collateral estoppel and *Rooker-Feldman* grounds. However, there is no question that defendants are incorrect. Not only were the issues in this case not decided by any state court, but they are issues over which the Probate Court had no jurisdiction and could not have decided. *See* "Memorandum Supporting Plaintiff's Opposition to Motion of Defendants David Heal, Edward L. Gerstein and Richard Bicki for Judicial Notice Pursuant to F.R.Ev. 201 and for 'Other Appropriate Relief'," which is restated and incorporated herein by reference.

It is also insightful that despite defendants' bald statements that their motion to dismiss "will demonstrate the speciousness of the complaint," they have now had over two months to prepare and serve such a motion. Certainly,

applied in light of the fact that defendant planned to file a motion to dismiss. The *OMG Fidelity* Court put the burden on defendant to show cause for the delay, stating that,

> Courts confronted with requests for orders, principally under Rule 26(c) of the Federal Rules of Civil Procedure, prohibiting a plaintiff from engaging in discovery pending resolution of a dismissal motion generally apply an analysis with is distinctly different from the stringent test advocated by the defendant for evaluating plaintiff's motion for expedited discovery. When exercising the discretion conferred under Rule 26(c), in response to a motion to stay discovery during the pendency of a dismissal motion, a court must determine whether the party seeking the stay has established the existence of "good cause" for the requested delay. Fed.R.Civ.P. 26(c); *Chesney v. Valley Stream Union Free Sch. Dist*., 236 F.R.D. 113, 115 (E.D.N.Y.2006); *Spencer Trask Software & Information Servs., LLC v. RPost Int'l Ltd*., 206 F.R.D. 367, 368 (S.D.N.Y.2002). The mere filing of a dismissal motion, without more, does not guaranty entitlement to such a stay. *Id*.; *see Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept.25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed.").

*OMG Fidelity, Inc*., 239 F.R.D. at 304.

Since defendants also suggest that Plaintiffs ought to have deposed Mr. Aubin prior to filing the Complaint,[4] it seems anomalous – and, indeed, disingenuous – to argue that plaintiffs ought to be foreclosed from conducting it now, within the auspices of a formal civil action in which the defendants have been fully apprised of the purposes of the deposition and the allegations against them. [5]

---

if dismissal were "clearly" warranted, a motion to dismiss could have been presented by this time. Instead, they have asked – and plaintiffs have agreed to permit them – until October 6, 2008, to respond to the Complaint. The fact is, the Complaint does present "serious and complex issues," as defendants admit in their opposition, and there is no clear or easy basis for dismissal.

[4] *See* "Memorandum of Law In Support of Response of Defendants Edward L. Gerstein and Richard Bicki In Opposition to Plaintiffs' Emergency Motion to Take and Perpetuate Testimony of David J. Aubin," at f.n.5. ["Defendants' Opposition Memo].

[5] While Plaintiffs would rather not embark onto irrelevant tangents, counsel submits for clarification purposes that plaintiffs did not "extract" or "request" an extension of the Rule 11 safe harbor period, as defendants falsely state. Instead, Attorney Lepizzera contacted counsel for Plaintiffs and requested an additional extension of time to respond to Plaintiff's complaint. In doing so, Attorney Lepizzera offered that defendants would reciprocate with an extension of the 21-day, Rule 11 safe harbor (with respect to a motion that defendants' Gerstein, Bicki and Heal have served). Because Plaintiffs were willing to extend the courtesy of an extension for defendants to respond to the Complaint, and because it was certainly not expected that Attorney Lepizzera's offer was made with ulterior

Finally, defendants will suffer no prejudice from having to take the deposition of David Aubin. Interestingly, they suggest that they have not had the opportunity to conduct other discovery before deposing this "important" witness, although they also claim that his testimony is irrelevant. In any event, though, the Rules of Civil Procedure do not require that other discovery be conducted before a party can conduct a deposition. Thus, this "prejudice" would exist even after the deposition. Moreover, this Court is free to grant Plaintiff's motion to depose Mr. Aubin, with the proviso that defendants be permitted to take a further deposition after further discovery is made.

Respectfully Submitted,
Plaintiffs,
By their attorney,

/s/ John B. Reilly

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, RI 02903
tel.: (401) 272-2800
fax: (401) 272-2811

purposes, plaintiffs accepted the offer of reciprocity. (It is interesting that Mr. Lepizzera did not sign this pleading containing such patently false assertions).

**CERTIFICATION**

I hereby certify that on the 2nd day of September, 2008, a true copy of the within document has been filed through the ECF system and will be sent electronically to the following registered participants as identified on the Notice of Electronic Filing (NEF).

Stacey P. Nakasian, Esq.
Duffy, Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
snakasian@duffysweeney.com

Michael J. Lepizzera, Jr., Esq.
Lepizzera & Laprocina Counsellors at Law, Ltd.
117 Metro Center Boulevard, Suite 2001
Warwick, RI 02886
mlepizzera@lldlawyers.com

Anthony M. Traini, Esq.
56 Pine Street
Providence, RI 02903
amt@atrainilaw.com

Richard C. Bicki, Esq.
56 Pine Street, Suite 200
Providence, RI 02903
rbickiesq@aol.com

Edward L. Gerstein, Esq.
29 Meeting House Lane
Little Compton, RI 02837
elg@zomolo.com

Melody A. Alger
Baluch, Gianfrancesco, Mathieu & Alger
155 South Main Street, Suite 101
Providence, RI 02903
melody.alger@bgmalaw.com

Joseph J. Altieri
Joseph J. Altieri, Ltd.
350 South Main Street
Providence, RI 02903
JoeAltieri@JJALTD.com

David Jesse Oliveira
David Oliveira, Esq.
155 South Main Street
Suite 305
Providence, RI 02903
doliveira@djolaw.com

Craig M. Scott
Duffy Sweeney & Scott, Ltd.
One Turks Head Place
Suite 1200
Providence, RI 02903
cscott@duffysweeney.com

It is also hereby certified that a true copy of the within will be sent by first-class mail, postage prepaid on this 2nd day of September, 2008 to the following defendants who have been served with process at their last known address.

Edward Brayton
396 Bullocks Point Ave
Riverside RI, 02915

/s/ John B. Reilly