UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Christine Peabody; Michael Griggs;
Lauren Griggs; and C. Monica Griggs

Plaintiffs

VS. C.A. No.: 08-243 ML

Carol Rita Kimberly Griggs, Alias;
David Heal, Alias, individually and
in his capacity as purported Trustee of
the Irrevocable Trust estate of the late Glenn E. Griggs;
Deborah Griggs, Alias; Dan A. Griggs, Alias;
Edward L. Gerstein, Alias; Richard Bicki, Alias;
Edward Brayton, Alias; the Griggs & Browne Co, Incorporated;
Griggs & Browne Home Inspection Service, Inc.;
Griggs & Browne Services, Inc.;
Griggs & Browne Termite Control, Inc; John Does 1
through 10; Jane Roes 1 through 10; XYZ Corporations,
Partnerships, Limited Liability Companies, Trusts and/or
Enterprises 1 through 10

Defendants

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' [DAVID HEAL, EDWARD L. GERSTEIN AND RICHARD C. BICKI] MOTION FOR JUDICIAL NOTICE PURSUANT TO F.R.Ev. 201 AND FOR OTHER APPROPRIATE RELIEF**

Plaintiffs' complaint is an 84 page, 535 paragraph offering that reads more like the prolix ramblings of a pro se litigant than a pleading well grounded in law and fact that results from the reasonable pre-filing inquiry and analysis demanded by F.R.Civ.P. 11. It is rife with violations of F.R.Civ.P. 8 and 9(b), of pleading requirements concerning specific causes of action (e.g., RICO), and is otherwise so ambiguous as to cause the defendants to guess as to which defendants are

meant to be included in a particular count, what specific conduct gives rise to their inclusion in that count, and the "when, where and how" of many of the allegations.[1]

To avoid a piecemeal approach to the numerous pleading and substantive deficiencies of the Complaint, minimize unnecessary expenditure of defendants' and the court's resources, and to curtail plaintiffs' intended on-going harm to defendants during the pendency of these proceedings, defendants advised plaintiffs of their intent to respond to the Complaint with a motion to dismiss pursuant to Rule 12(b)(6).[2] In furtherance of those motions, defendants Heal, Gerstein and Bicki filed a "Motion For Judicial Notice Pursuant to F.R.Ev. 201 And For Other Appropriate Relief" (Doc. 24)[3], an "Index" of documents for which judicial notice is requested (Doc. 24B), and supporting memorandum (Doc. 25). These filings set forth the law in the First Circuit applicable to judicial notice, and make plain that the documents for which judicial notice is requested "are judgments, orders, opinions, pleadings and transcripts" in the now admitted extensive prior state court proceedings that are relevant to the core allegations of plaintiffs' complaint. (Defendants' Rule 201 Memorandum at 1).

Plaintiffs have now filed their opposition with supporting memorandum (Doc. Nos. 35 and 36; "Plaintiffs' Rule 201 Opposition"), which does not dispute (a) the existence or authenticity of any of the various documents identified in defendants' Index (Doc. No. 24B); (b) that the documents are contained in the court files of prior state court proceedings; (c) that applicable law

---

[1]Ambiguities in a complaint that fail to identify which defendant is named in a particular count leave "the possible substance of a claim hidden in prolixity" and violate the rules of pleading. Kuhl v. FDIC, 8 F.3d 905, 907 (1st Cir. 1993).

[2]On August 1, 2008, defendants Heal, Gerstein and Bicki also served plaintiffs' counsel with a motion for sanctions and memorandum pursuant to F.R.Civ.P. 11. The "safe harbor" provisions of Rule 11 were extended to September 8, 2008 as a quid pro quo for an enlargement of time for defendants to file their motions to dismiss pursuant to F.R.Civ.P. 12(b)(6). Defendants' Rule 11 motion, which provides significant background and explanation of the prior state court proceedings, will be filed tomorrow as plaintiffs have rejected the "safe harbor."

[3]As it is anticipated that several memoranda will be filed during this proceeding, the referenced Rule 201 memorandum is referred to as "Defendants' Rule 201 Memorandum."

allows this Court to take judicial notice of the records of prior state court proceedings, including without limitation, judgments, orders, opinions, pleadings and transcripts, or (d) that the documents for which judicial notice is requested are of the type that are ordinarily and customarily susceptible of judicial notice for the purposes of a Rule 12(b)(6) motion.[4] Plaintiffs also acknowledge that the Court may take judicial notice not only of the existence of the documents, but of their "contents and that they say certain things" (Plaintiffs' Rule 201 Opposition Memorandum at 2), and that judicial notice may be taken of facts dispositive of affirmative defenses, such as a statute of limitations defense (id., at fn. 2).[5]

Plaintiffs' Rule 201 Opposition does not address the issues presented by defendants' motion, other than to admit that the documents for which judicial notice is requested exist in the records of state court proceedings, are what they are purported to be as described in defendants' Index, and easily fall within the class of documents that are susceptible to judicial notice.[6] Instead, plaintiffs attempt a pre-emptive strike against an issue—claim preclusion—noticed to plaintiffs as one basis for defendants' Rule 12(b)(6) motion. To avoid the impact that judicial notice will have

---

[4]Plaintiffs' claim that defendants' Index seeks judicial notice of "every" document filed in the prior state court proceedings is wrong. While the Index identifies numerous documents, it does not identify all documents from prior state court proceedings that are subject to judicial notice, nor does it catalog every document filed in the state court litigation. Of course, plaintiffs' counsel would know this if he had examined the underlying court files as part of his Rule 11 pre-filing inquiry.

[5]Plaintiffs criticize defendants' reliance on Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, 181 F.3d 410 (3rd Cir. 1999) for the proposition that a judicially noticed document may "be examined to determine if it contradicts not only legal conclusions but also plaintiffs' factual claims." The artificial distinction plaintiffs seek to draw is that the Southern Cross court relied on judicial notice of a prior judicial opinion. To dismiss this unsupportable position as to the effect and use of judicially noticed documents, we need look no further than E.I. DuPont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986), where the Court took judicial notice of a prior state court pleading to reject appellant's legal conclusions and factual claims in subsequent federal litigation.

[6]As part of the pre-filing inquiry required by F.R.Civ.P. 11, counsel for plaintiffs should have reviewed each and every document identified by defendants (as well as the rest of the court files), and would have and should have challenged here any document referenced by defendants that is either not there, or is not as defendants describe. Instead, plaintiffs seek to erect a roadblock and increase costs by requiring "authentication" of that which plaintiffs already know are documents whose accuracy cannot reasonably be questioned, and which also, in many instances, are their own documents bearing their own signatures, or those of their then various attorneys. Plaintiffs cannot, and do not, claim that judicial notice as requested will result in any prejudice to them based on lack of notice, or for any other reason.

on this case, plaintiffs' opposition papers pose a transparent attempt to divert the Court's attention to a myopic, inaccurate and improper offering focused only on the issue of claim preclusion.[7]

[7]Plaintiffs now concede that in the state court proceedings they raised the issues that the late Glenn E. Griggs ("Glenn") purportedly lacked decision-making abilities and was the victim of the very undue influence for the very reasons alleged in their Complaint (Plaintiffs' Rule 201 Opposition Memorandum at 7; see also, Index docs. 1, 53, 69, 73, 92, 101, 165-167, and 170-175). Plaintiffs further admit that the very financial document now challenged—the Trust—was found be a viable, less restrictive alternative to the guardianship of Glenn sought by the plaintiffs in Griggs I (Plaintiffs' Rule 201 Opposition Memorandum at 6; see also, Index docs. 47, 75, and 128), that the probate court in Griggs II relied on that Trust, and the fact that the bulk of Glenn's assets had been transferred into the Trust, in defining the scope of Mr. Heal's authority as a court appointed fiduciary in that proceeding (Plaintiffs' Rule 201 Opposition Memorandum at 9; see also, Index doc. 128). Remarkably, plaintiffs unabashedly ignore that the "procedural reasons" that resulted in the dismissal of the Superior Court proceedings in Griggs I and Griggs II were caused by the intentional or negligent conduct of plaintiffs own counsel, that those dismissals are considered dismissals for "statute of limitations" reasons [Kelly v. Jepson, 811 A.2d 119, 121 (R.I. 2002)], and that a dismissal on statute of limitations grounds is considered a dismissal on the "merits" [Corrado v. Providence Redevelopment Agency, 320 A.2d 331, 333-334 (R.I. 1974)].

However, to avoid any preclusive effect on these (and other) issues, plaintiffs offer a skewed and unsupportable notion of res judicata, by claiming that the state courts did not address the merits or make specific findings of fact on the issues of undue influence, competency or the validity of Glenn's financial planning documents (Plaintiffs' Rule 201 Opposition Memorandum at 7-8). As this Court is well aware, and as defendants' Rule 12(b)(6) motion will make plain, res judicata is not dependent upon specific findings of fact relevant to, or a specific determination of, a particular issue, but instead applies to all issues that were or could have been raised in prior proceedings, that Rhode Island and this Court have adopted a "transactional approach" to the question of preclusion, and that new theories, new evidence or a variation in the relief sought do not bar the application of the principles of preclusion.

Other than a misplaced reliance on an inaccurate view of the law, Plaintiffs' Rule 201 Opposition Memorandum is troubling for several other reasons. First is plaintiffs' knowing misrepresentation concerning the appointment of Attorney Michael St. Pierre as temporary limited guardian of Glenn's "person" as "ultimately" the result of "yet more protracted litigation" in the Warwick Probate Court in Griggs II (Plaintiffs Rule 201 Opposition Memorandum at 9). This is simply untrue. Mr. St. Pierre was appointed on July 3, 2002, at the first probate court hearing after the temporary guardianship order entered only a week earlier, on June 26, 2003 (see, Index doc. 82). Next is the deliberate and intentional mischaracterization concerning Probate Judge Evangelista's statements about the case (Griggs I) going on for "too long." Plaintiffs seek to attribute delay to allegedly improper discovery conduct of attorneys Gerstein and Bicki. However, as Judge Evangelista made plain in the very transcript plaintiffs rely on, the delay in the case resulted from the difficulties in obtaining the deposition of Dr. Stoukides—plaintiffs' doctor: "For the last six or seven months we've been waiting to see Dr. Stoukides deposition***" (PCTR 06/21/01 [see also, PCTR 02/16/01 and 03/29/01]), and that "but this case in this Court's opinion has gone on far too long. I am not saying that its your (counsel for plaintiffs) fault, or Mr. Gerstein's fault" (PCTR 06/21/01 at 13; see also, PCTR 01/24/01, 02/16/01, and 03/29/01).

Also improper is the misuse of the GAL report and the transcript appended as Exhibits to Plaintiffs Rule 201 Opposition Memorandum as being proffered for the truth of the matters asserted by third parties (i.e., conclusions of law by the probate judge, and statements of fact by the GAL), and intentional misstatements concerning Dr. Stoukides and opposing counsel. It is, however, interesting [and will be more fully presented in the Rule 12(b)(6) motion] that plaintiffs and the probate court recognized that a challenge to the sufficiency of Glenn's financial documents could be raised in the probate court if the documents were the subject of "undue influence" (PCTR 02/16/01), executed at a time when Glenn lacked the capacity to do so (PCTR, 06/21/01 at 12), or "if there is a problem with the people named (as fiduciaries) in the documents" (id., at 9). It is noteworthy that in 2000, as now, Mr. Heal was named Trustee, and Carol Griggs was named as the Health Care Agent in a Durable Health Care Power of Attorney executed by Glenn [and referenced in the Complaint (¶ 300), and which the probate court in Griggs II expressly found to be valid (Index doc. 146).

ARGUMENT

"The Supreme Court recently clarified the law with respect to a plaintiff's pleading requirement in order to survive a Rule 12(b)(6) motion." Damon v. Moore, 520 F.3d 98, 102 (1st Cir. 2008). In Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007), the Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [8] Further, the Court explained that the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must do more than "create a suspicion [of] a legally cognizable right of action." Id., at 1965 (internal citations omitted).[9] It remains well settled that a Court is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like." Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006); Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007).

As noted in defendants' memorandum, and as now conceded by plaintiffs, in determining a Rule 12(b)(6) motion, the Court may consider at least three distinct sources of information: (a) well-pled allegations of the complaint; (b) documents referenced or incorporated into the complaint (whether explicitly or implicitly); and (c) matters of which the Court can take judicial notice.[10]

---

[8]The new pleading standard set forth in Bell Atlantic has been widely embraced by both the First Circuit Court of Appeals and Rhode Island District Courts. See, In Re Citigroup, 2008 WL 2840601, *4 (1st Cir. 2008); ACA Financial Guaranty Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008); Ruiz Rivera v. Pfizer Pharmaceuticals, LLC, 521 F.3d 76, 84 (1st Cir. 2008); Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007); Pascale Service Corp. v. International Truck and Engine Corporation, 2007 WL 2905622, *3 (D.R.I. 2007); Grady v. Goldberg, 2008 WL 821610, *4 (D.R.I. 2008).

[9]In doing so, the Court retired the oft-cited language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," characterizing it as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 127 S.Ct. at 1969.

[10]Defendants will not repeat the extensive First Circuit authority in their initial memorandum concerning the use of documents implicitly or explicitly incorporated into the Complaint, or for the Court's ability to rely on matters subject to judicial notice in the context of determining a Rule 12(b)(6) motion.

F.R.Ev. 201 provides:

> Rule 201. Judicial Notice of Adjudicative Facts
>
> (a) Scope of rule. This rule governs only judicial notice of adjudicative facts.
>
> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c) When discretionary. A court may take judicial notice, whether requested or not.
>
> (d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.
>
> (e) Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
>
> (f) Time of taking notice. Judicial notice may be taken at any stage of the proceeding.
>
> (g) Instructing jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed

Adjudicative facts are "facts about the parties or events involved in the case," United States v. Amado-Nunez, 357 F.3d 119, 121 (1st Cir. 2004), or as another court succinctly stated, "who did what, where, when [and] how," United States v. Gould, 536 F.2d 216, 219 (8th Cir. 1976)[quoting 2 Kenneth Davis, Administrative Law Treatise § 15.03 at 353 (1958)].[11] Judicial notice of adjudicative facts may be taken at any stage of the proceeding [Rule 201(f)], and is mandatory if requested by a party and a court is supplied with the "necessary information" [Rule 201(d)],

[11] See, Qualley v. Clo-Tex International, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000).

provided that the fact for which judicial notice is sought is "not subject to reasonable dispute [and] is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" [Rule 201(b)].

Defendants have satisfied all the conditions precedent for this Court to take judicial notice of the matters requested, and all other matters of a similar nature and source. A simple review of the list of documents identified in defendants' Index demonstrates that the documents relate to facts and events—the "who did what, where, when [and] how"—in the underlying state court proceedings (which comprise, in essence, the basis for this litigation)[12] and the issues raised there (see, e.g., Index documents 1, 7, 8, 13, 21, 22, 30, 38, 39, 46, 47, 48, 53, 61-69, 72, 75, 76, 81, 82, 94, 101-109, 110, 112, 116- 120, 127-128, 165-167, 170-178). These documents likewise relate to plaintiffs' knowledge of certain matters [including, without limitation, knowledge as of October 16, 2000 (Index docs. 1-4) that attorney Gerstein also represented Carol Griggs in what plaintiffs characterize as "unrelated" state court proceedings involving her brother Paul Gonya (Complaint at ¶306-307)[13], and of the matters that triggered the commencement of the statute of limitations period for plaintiffs' putative federal RICO claims (see, e.g., PCTR, 07/03/03)[14]]; the identity of

[12]To the (extremely unlikely) extent that plaintiffs' complaint is capable of rational understanding, and as admitted by plaintiffs' counsel at hearing before United States Magistrate Judge Martin on September 5, 2008, the only basis of plaintiffs' claims against attorney defendants Gerstein and Bicki arises from their roles as adversary litigation counsel in the very same underlying state court proceedings that plaintiffs now claim are irrelevant to both their Complaint and defendants' upcoming Rule 12(b)(6) motion. Plaintiffs' Rule 201 Opposition Memorandum at fn. 1.

[13]At the time that Mr. Gerstein entered his appearance in the probate proceedings in Griggs I, attorney Brian Goldstein (and his partner, Alfred Factor), also represented Paul Gonya and his associates in the unrelated state court proceedings involving Carol Griggs. Ironically, the banner of Mr. Gonya's representation in those proceedings was subsequently picked up by plaintiffs' current counsel.

[14]For example, on July 3, 2003, on the record in open court, then counsel for plaintiffs Lauren, Christine and Monica (and others) clearly demonstrated that plaintiffs then had knowledge of all of the information necessary to trigger the commencement of the 4 year statute of limitations for this civil RICO action. As then counsel was managing the litigation for his clients, and his statements were made in furtherance and during the course and scope of his authority, they are binding as admissions upon the plaintiffs as to their knowledge of the alleged acts that plaintiffs now claim support the RICO (and other) counts set forth in the Complaint. F.R.Ev. Rule 801(d)(2). An admission on a dispositive issue is a valid consideration in determining a Rule 12(b)(6) motion. Roy v. General Electric Co., 544 F.Supp.2d 103, 107 (D.R.I. 2008).

persons who are bound by the prior state court proceedings (see, e.g., Index docs. 2, 49, 50, 52, 158)[15]; the particular alleged litigation abuses, such as contempt motions and discovery objections of which plaintiffs complain (Index docs. 14, 16, 34, 36, 39, 44, 45, 49, 63-67, 76, 80, 90, 106, 107, 109, 113, 114, 122-124, 147-155, 161-162 )[16]; the identification of transcripts of hearings and depositions as part of the official record of the probate proceedings (Index docs. 115 and 124)[17]; and testing the legal conclusions and factual assertions of the Complaint concerning plaintiffs' inability to visit with their father (Index docs. 132-143).[18] In fact, this Court need look no further than plaintiffs outlandish allegation that the Warwick Probate Court itself is a RICO enterprise (Complaint at ¶286), or was the "vehicle" allegedly used by attorney defendants Gerstein and Bicki to exact "retribution" against the plaintiffs (Complaint at ¶216), to conclude that the "who did what, where, when [and] how" in the context of the prior state court proceedings involves "facts about the parties and events involved in the case", despite plaintiffs' duplicitous approach concerning those prior proceedings.

Defendants have also demonstrated that the facts for which judicial notice is requested are not subject to reasonable dispute and "are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The necessary information is provided

---

[15]Plaintiffs disingenuously attempt to insulate Michael Griggs from the effects of the prior state court proceedings. Plaintiffs' Rule 201 Opposition Memorandum at 8. However, he is bound by those proceedings because he received notice of them, and had the opportunity join as a party, but did not. R.I.G.L. §33-15-17. See also, Perez v. Volvo Car Corp., 247 F.3d 303, 312 (1st Cir. 2001).

[16]Plaintiffs' claim, for example, that the "litigation abuses" included obtaining restraining orders against them (Complaint ¶488). Had plaintiffs' counsel engaged in the necessary pre-filing inquiry, he would have learned that no such restraining orders entered against plaintiffs as alleged, and that the probate court does not have the authority to issue such restraining orders.

[17]The Index contains a typographical error: document no. 115 should reflect the Order of hearing on 04/10/04, not 04/10/08.

[18]Reference to certain documents identified in defendants' Index, or particular paragraphs of the Complaint, are not intended to be all inclusive, but are offered only by way of example.

to allow the Court to identify with specificity the document(s) as orders, judgments, opinions, pleadings and transcripts. The sources of those matters are state court proceedings in which the plaintiffs participated, and many of the documents are created and/or signed by attorneys for the plaintiffs during the course and in furtherance of their representation of plaintiffs (or signed by plaintiffs themselves). Other documents were prepared by either attorney defendants Gerstein and Bicki as adversarial counsel and delivered to counsel for plaintiffs during the course of the state court litigation,[19] or prepared and issued by the state courts themselves.

Thus, for example, plaintiffs cannot reasonably dispute the motion practice and judicial decisions concerning access to Glenn's medical and financial records (Index docs. 13-16, 21, 31-39, 46, 61, 63, 65, 68-71, 75, 103, 170-176 and 179; see, also, PCTR 11/30/00, 01/11/01, 02/16/01, 08/13/03, 08/21/03, 09/18/03, 09/24/03, and 10/10/03; SCTR 11/26/01, 01/26/02, 02/11/02 and 05/22/06); that Attorney Michael St. Pierre controlled visitation (or access to the "society" of Glenn, at least in Griggs II) (Index docs. 82, 132-143; see, also, PCTR 04/15/04, 02/14/05, 11/17/05 and 07/6/05); the basis for contempt adjudications by the probate court (Index docs. 113, 114, 122-124, 147-162; see, also, PCTR 12/09/03, 08/12/04, 02/28/08 and 04/10/08); that plaintiffs asserted claims that Glenn was "incompetent" and the victim of undue influence in state court proceedings (Index docs. 1, 17, 48 53, 69, 75, 81, 92, 101, 108-109, 120, 129-134, 165-167, and 179; see, also, PCTR 11/30/00, 02/16/01, 03/29/01, 06/21/01, 08/13/03, 08/21/03, 09/18/03, and 10/10/03; SCTR 11/26/01, 01/26/02, 02/11/02 and 05/22/06); or that no later than July 3, 2003, all of the allegations underlying the RICO claims alleged here were detailed by plaintiffs' then

[19]The Court can take judicial notice of the fact that during the course of litigation, opposing counsel serve motions, memoranda and other filings on each other, rather than the individual litigants, because that is "a fact generally known within the territorial jurisdiction of the trial court." See, e.g., Rule 5, Superior Court Rules of Civil Procedure; F.R.Civ.P. 5. The Court can also take judicial notice of the fact that attorney Bicki had no role in the proceedings identified as Griggs II, a dispositive fact that plaintiffs knew, and that their counsel would have known had he engaged in the required Rule 11 pre-filing inquiry.

counsel at a hearing in the Warwick Probate Court and that the four year statute of limitations began to run—at the latest—as of that date (Index docs. 81, 82, 93, 94; and PCTR 07/3/03).[20]

Defendants' motion has provided plaintiffs with the opportunity to be heard as to the propriety of taking judicial notice as requested. Although it is understandable that plaintiffs would prefer to keep the prior state court proceedings hidden from view (other than to allow whatever brief glimpses they deem helpful to their dubious cause), plaintiffs have offered no good reason for this Court to withhold the requested relief; the Court should take judicial notice of the judgments, orders, opinions, filings and transcripts that are not, and cannot be, subject to reasonable dispute and whose accuracy cannot reasonably be questioned. Upon the filing of defendants' Rule 12(b)(6) motion, if plaintiffs then have an objection to the manner or "tenor" in which a particular judicially noticed fact is used, they will then have yet a second opportunity to be heard, and the Court will then have the ability to exercise the discretion recognized in Trans-Spec Truck Services, Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).

WHEREFORE, defendants respectfully request that plaintiffs' opposition be rejected, and that the relief requested in their Motion For Judicial Notice and Other Appropriate Relief be granted.

[20]In an oblique reference, plaintiffs seek to imply that statements of counsel made in court during the course of litigation are not susceptible to judicial notice (Plaintiffs Rule 201 Opposition Memorandum at 10). At hearing on July 3, 2003, counsel for plaintiffs claimed, inter alia, that attorney defendant Gerstein (and by implication, defendant Heal), conspired and associated to isolate Glenn from plaintiffs and others for the purpose of exercising undue influence over Glenn, to gain control over Glenn's assets (including his companies), and to convert those assets for their own benefit. (PCTR 07/03/03 at 58-61, 67-69). While defendants agree that the statements of plaintiffs counsel at hearing on July 3, 2003, are not being offered for the truth of those statements, those statements are susceptible to judicial notice of the fact that plaintiffs knew as of that date at the latest, of their now-proffered RICO claim.

Respectfully submitted,

Edward L. Gerstein and Richard C. Bicki
By Their Attorney,

*/s/ Anthony M. Traini*
Anthony M. Traini (#4793)
56 Pine Street – Suite 200
Providence, RI 02903-2819
Tel. (401) 621-4700
Fax (401) 621-5888
E-mail:amt@atrainilaw.com

David Heal, individually and in his capacity as the Trustee of Glenn E. Griggs Trust,
By and through his attorneys,

*/s/ Michael J. Lepizzera*
Lepizzera & Laprocina Counselors at Law, Ltd.
Michael J. Lepizzera, Jr. #4995
301 Metro Center Blvd. Suite 102
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6950
Email: mlepizzera@leplap.com

CERTIFICATE OF SERVICE

A copy of this pleading has been served upon all counsel of record via the ECF system and upon all unrepresented parties by United States mail.

*/s/ Anthony M. Traini*
Anthony M. Traini