EDWARD L. GERSTEIN
ATTORNEY AT LAW

29 MEETING HOUSE LANE
LITTLE COMPTON, RI 02837
TEL (401) 635-2282
FAX (401) 635-1612

September 2, 2005

Paul DiMaio, Esq.
215 Broadway
Providence, RI 02903

James Howe, Esq.
215 Broadway
Providence, RI 02903

Re: Estate of Glenn E. Griggs
No. 2003-249

Gentlemen:

This letter is in response to Paul's letter addressed to me dated August 24, 2005, and attorney Howe's parrot correspondence addressed to me dated August 29, 2005.

On or about July 28, 2005, I received a telephone call from Paul. He inquired about a potential meeting of the lawyers. No parameters were discussed. I told Paul that Tony Traini was tied up on the Lincoln Park case, and that I would get back to him after that matter was completed. While I am uncertain how much of your respective practices involve significant federal trials, I assume that you both understand that the demands on Tony's time did not suddenly evaporate on the announcement of a verdict.

On August 16, 2005, I received a telephone call from attorney Howe. He indicated that he was calling at the request, and with the authority, of Paul to inquire about a meeting now that the Lincoln Park case was concluded. He also indicated that Paul was court-excused until after Labor Day. Paul subsequently affirmed his court excusal by letter dated August 19, 2005, when he requested that the deposition of his client, Christine Peabody, be continued. A copy of that letter is enclosed. I am somewhat confused how Paul can be unavailable for a deposition, yet available to craft and send his letter of August 24, 2005, and otherwise make himself available for a potential meeting of counsel. Moreover, it is curious that both of his letters ignore my telephone conversation with attorney Howe of August 16, 2005. Despite these inconsistencies, however, I accept the inherent conflicts at face value.

During the above-referenced telephone conversation with attorney Howe, he presented that attorney meetings can be beneficial, and that I had never litigated against you before. In principle, I agreed with both of his statements, although I see no relevance to whether or not we have ever previously engaged each other in litigation. However, in response to my request that he identify an agenda for any proposed meeting, he listed three items: (1) visitation; (2) disclosure of Mr. Griggs' financial and estate planning documents; and (3) to attempt agreement on the identity of a guardian for Mr. Griggs, other than Mr.

Heal. Absent from his proposed agenda was any suggestion that we attempt to address the pending contempt and sanction motions.

In response to his proposed agenda, I informed Mr. Howe that (1) on the issue of visitation, he should make a proposal that recognizes the admitted dangers and misuse of "visits" by your collective clients (including, without limitation, Lauren Griggs); (2) disclosure of Mr. Griggs' financial planning and estate documents is not a suitable topic for discussion for several reasons, including without limitation, confidentiality under Rule 1.6 of the Rules of Professional Conduct, and the right to financial privacy, points that attorney Howe seemed to have difficulty grasping. (On this issue, I also draw your attention to the fact that three courts have already rejected the attempts of your clients to gain access to that information); and (3) your collective clients waived, both by the statements of counsel, and their own conduct, the right to participate in, or object to, the appointment and identity of a limited guardian, if any, in the current proceedings. They also expressly waived any objection to the appointment of Mr. Heal, if a guardianship were deemed appropriate. In short, Mr. Howe was advised that, notwithstanding that I have never litigated against you before, and notwithstanding that you are now the eleventh team of lawyers (depending on how one counts) to represent your clients in their quest to wrest control of my client's assets, we were not going to relitigate and replough old ground.

Perhaps most telling to me was the notable absence of any proposal to attempt resolution of the pending contempt and sanction issues, and the short shrift Mr. Howe gave the issues when raised by me.

I also find as absolutely disingenuous, if not the ultimate display of *chutzpah*, your purported concern that "my representation of the Ward would include a concern for the best interests of the Ward, preserving assets and the Estate of the Ward in bringing this matter to conclusion." While it states no more than the obvious, this simply goes too far. My response is threefold.

First, the expense and other damage to my client results from the admitted, and long standing, wanton, vexatious, fraudulent, unethical and contemptuous conduct of your collective clients, and those acting in concert with them, including certain of their former counsel. Their conduct, and the inherent unfairness to my client, is made all the more egregious because your collective clients have not yet had to pay for any legal fees or costs purportedly incurred on their behalf. They have received a free ride at the expense of my client. Whether Paul Gonya, Mr. Cardi or some other "benefactor" is continuing to pay for their legal fees and expense is a point that will be, and is, subject to disclosure in accord with prior orders of the Court. Therefore, I now request that you disclose the source of any payments made to you in this matter. That you are receiving benefactor

payments, either directly or indirectly, is suggested not simply by the history of these proceedings, but also by the lack of any expression of concern in your letters about any costs and expenses incurred, or to be incurred, by your clients, as well as previous representations made by certain of their former counsel that funds were then not available for their representation. However, it is clear that none of your collective clients has paid for any legal fees and expense to date (that according to Mr. Howe are $250,000.00), other than a possible $1,500.00, or so, payment allegedly made by Patricia Griggs years ago.

Second, it is out of concern for the preservation of my client's assets that we have pursued sanctions and contempt against your clients. Their conduct, and the conduct of those acting in concert with them, went beyond the pale. While I have not yet computed an exact figure, the amount of sanctions to be sought, based on both independent pending, or to be filed, sanction motions and the contempt finding, may well substantially exceed the amount of fees and costs paid by others on behalf of your collective clients. Moreover, there is law to support the notion that because of the vexatious conduct of your collective clients, it is within the discretion of the court to award my client all fees and expenses incurred by him in both these proceedings and the prior proceedings, commonly referred to as *Griggs I.*

Third, out of concern for lessening the time and expense in bringing this matter to conclusion, we may be prepared to entertain a settlement of your clients' obligations to Mr. Griggs. Any such resolution must include, at a minimum and in settlement of all outstanding, or to be filed, claims for sanctions and sanctions as a result of the contempt finding, the following: (1) an amount equal to all fees and costs paid, or outstanding, to all former counsel in these proceedings, including, without limitation, Frank Orabona, by or on behalf of your collective clients, regardless of any refunds, rebates or repayments demanded by, or made to, the benefactor payors. The information presently available to us, other than Mr. Howe's statement, indicates that those fees and costs exceed $200,000.00. Your collective clients would have to make full disclosure, and require that their former counsel each make full disclosure of all amounts paid or owed for legal fees and costs in these proceedings; (2) payment for the out of pocket expense incurred by my client in these proceedings, including, without limitation, transcripts (that may, where appropriate, be limited to the differential between any transcript costs for copies included in paragraph (1) and the actual transcript costs incurred by my client); (3) payment of legal fees to be incurred in negotiating and drafting the appropriate settlement documents (that may be reduced by assigning this task to one lawyer from each "team"); and (4) a return of ownership of the life insurance policy improperly transferred to, and by, Patricia Griggs when my client was not only under the protection of the probate court, but also at

a time when, according to Patricia, he was incapable of making a knowing decision to allow that transfer. The settlement offer set forth herein in (1)-(4) is made pursuant to Rule 408, Rhode Island Rules of Evidence, and shall remain open for 5 business days. If this offer is not accepted within that time, it should not be construed as a waiver or limitation on the amount that will be sought.

That you chose to send Judge Earle a copy of your respective self-serving and inaccurate letters is disturbing. Aside from violating the practice governing when it may be appropriate to copy a Judge with intra-counsel communication, the record in this case makes clear that your communication with Judge Earle was improper. That impropriety necessitates that a copy of this letter likewise be sent to him. Therefore, I request that in the future, and without the necessity of motion practice on the issue, you (and attorney Dodd) refrain from sending the court copies of communications between counsel.

While I am uncertain of how much, if any, of the file you have reviewed, I am confident that upon your review you will find numerous reasonable offers and efforts made on behalf of my client to settle this matter. Unfortunately, those efforts were all rebuffed. The expense and damage in this case results solely from the vexatious, wanton, fraudulent, unethical and contemptuous conduct of your clients and those acting in concert with them. The advantage to your collective clients is that they have not had to pay to further those improper efforts, and obviously have been able to litigate from a position where money is no object. The injury to the interests of my client as a result of that conduct is patent. It was, and remains, our belief that this matter should be settled. Unfortunately, because their adventures and conduct have cost them nothing and instead have resulted in a temporary windfall to Patricia Griggs, and based on my conversation with attorney Howe and your correspondence, I have very little expectation that a good faith reasonable and binding settlement can be attained. Rather, it appears that my client will continue to suffer more of the same harm at the hands of your collective clients.

If you have a settlement proposal to resolve this matter, or any outstanding issues, then by all means send it to me. I can assure you that any meaningful good faith proposal will be given serious consideration. However, it is the consensus of counsel for Mr. Griggs that without a meaningful, good faith proposal and a clearly defined agenda, a meeting would not be fruitful. Of course, you should feel free to contact Tony or me with respect to any particular issue, as it is always our policy to avoid motion practice, if possible.

Finally, and consistent with our approach in this matter, the depositions scheduled for August 30 and 31 were cancelled due to Paul's court-excuse, and as a courtesy to him.

We simply did not want to risk the additional expense and effort of having to either re-take those depositions in his presence, or engage in motion practice to argue that they would otherwise be admissible, including against Ms. Peabody, because Paul had "notice and opportunity" to appear, regardless of his court excuse. (which was not served upon us, and it is therefore unclear whether he was excused from this court for the purpose of these proceedings).

While we remain of the belief that this matter should be resolved without further ado, the ball is in your court to (a) present a good faith, reasonable proposal, and (b) represent that you have the authority to effectuate anything you propose.

Very truly yours,

Edward L Gerstein

cc: Hon. John G. Earle
Clerk, Probate Court
M. Lepizzera, Esq.
M. St. Pierre, Esq.
L. Jones, Esq.
A. Traini, Esq.
T. Dodd, Esq.
James O'Neil, Esq.
Nancy Griggs

LAW OFFICE OF
PAUL J. DIMAIO, ESQUIRE
215 BROADWAY
PROVIDENCE, RHODE ISLAND 02903
(401) 272-3900
FAX: (401) 453-1230

August 19th, 2005

Edward Gerstein, Esquire
29 Meeting House Lane
Little Compton, RI 02837

RE: GRIGGS ESTATE

Dear Attorney Gerstein:

I am in receipt of your Notice of Deposition as to my client Christine Peabody for August 30th, 2005. Please note that I am court-excused up to and including September5th, 2005. Therefore, the deposition for my client needs to be continued.

Further, since I have been court-excused for the month of August, my schedule in September will be overwhelming with outstanding court cases, consequently, please have your office call my associate, Priscilla Facha DiMaio, and she will coordinate a mutual time, shortly after Labor Day, for the deposition. Since I do an immense amount of actual court appearances, I appreciate the deposition being scheduled for 2:00. Thank you.

Very truly yours,

PAUL J. DIMAIO
Attorney

Faxed: 635-1612

and by regular mail