UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTINE PEABODY; MICHAEL GRIGGS;
LAUREN GRIGGS; and C. MONICA GRIGGS,
Plaintiffs,

v.                                                          C.A. No. 08-243-ML

CAROL RITA KIMBERLY GRIGGS, alias;
DAVID HEAL, alias, individually and in his
capacity as purported Trustee of the Trust of
the late Glenn E. Griggs; DEBORAH GRIGGS,
alias; DAN A. GRIGGS, alias; EDWARD L.
GERSTEIN, alias; EDWARD BRAYTON, alias;
John Does 1 through 10; Jane Roes 1 through 10;
XYZ Corporations, Partnerships, Limited Liability
Companies, Trusts and/or Enterprises 1 through 10,
Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' response to an order to show cause why their

second amended complaint should not be dismissed.  Having reviewed the memoranda submitted

by the parties, and for the reasons outlined below, this Court finds that Plaintiffs have failed to

show cause why the second amended complaint should not be dismissed.

### I.  Background and Procedural History

On June 24, 2008, Plaintiffs filed a 19-count, 84-page 535-paragraph complaint in this

court seeking both money damages and injunctive relief.  Attached to that complaint as "exhibits"

were a written statement and an affidavit.  The original complaint alleged: (1) a violation of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (2) a

1

violation of 18 U.S.C. 1962(b), (3) a violation of 18 U.S.C. § 1962(d), (4) a violation of the

Electronic Communications Privacy Act, 18 U.S.C. § 2510 et. seq., (5) conspiracy to violate 18

U.S.C. § 2510, (6) a violation of R.I. Gen. Laws § 7-15-1 et. seq., (Rhode Island RICO), (7) two

claims of a violation of the right of privacy, (8) "tortious interference with expectancy of

inheritance," (9) breach of fiduciary duty, (10) "invalidation of real estate deed," (11) conversion,

(12) "invalidation of will and codicil," (13) "invalidation of trust," (14) abuse of process, (15)

"exploitation," and (16) common law conspiracy.  See Complaint (Docket #'s 1 and 2).  On June

26, 2008, Plaintiffs filed a motion for a temporary restraining order.  This Court denied that

motion on June 30, 2008.

On September 8, 2008, Plaintiffs filed their first amended complaint pursuant to Fed. R.

Civ. P. 15(a)(1).  The first amended complaint is an 18-count, 97-page 538-paragraph document

with 7 exhibits[1] attached, totaling an additional 36 pages.[2]

In early December 2008, Defendants filed motions to dismiss the first amended complaint.

At oral argument on the motions, this Court directed the parties to address the requirements of

Fed. R. Civ. P. 8.  After reviewing the papers submitted in the matter, including the first amended

complaint and exhibits, and considering the arguments of counsel, this Court determined that the

first amended complaint was in violation of the "short and plain statement" requirement of Fed. R.

Civ. P. 8.  This Court dismissed the amended complaint without prejudice and gave Plaintiffs

until May 13, 2009, to file a second amended complaint that complied with the Federal Rules of

---

[1]Two affidavits, two written statements, a photo, copies of nine letters (included as one exhibit) and a copy
of a motion filed in the Warwick, Rhode Island Probate Court.

[2]Plaintiffs dropped the "invalidation of will and codicil" count.

Civil Procedure.[3]

On May 13, Plaintiffs filed the second amended complaint.[4]  In the second amended

complaint, Plaintiffs dropped four Defendants (the Griggs & Browne companies) and four

counts.[5]  The second amended complaint includes 13 counts laid out in 380 paragraphs over 73

pages.  Additionally, 6 exhibits, totaling 22 additional pages, are attached to the complaint.  On

May 15, 2009, this Court issued an order directing Plaintiffs to show cause in writing why the

---

[3]Plaintiffs complain that the issue of a Rule 8 violation was not adequately raised in Defendants' memoranda in support of their motions to dismiss the first amended complaint.  (Defendants gave it "short shift. . . ." Plaintiffs' Memorandum Showing Case at 2.)  Defendant Gerstein's memorandum in support of the motion to dismiss argued that the amended complaint "does extreme violence" to Rule 8, was an "affront" to Rule 8, and was an "embodiment of a Rule 8 violation."  Defendant Gerstein's Memorandum in Support of Motion to Dismiss at 6, 26 n. 64, 46.  Defendant Heal also argued that, to "say the least, the Complaint is incomprehensible and is violative of . . . Fed. R. Civ. P. 8. . . ."  Defendant Heal's Memorandum in Support of Motion to Dismiss at 2.  The Court rejects Plaintiffs' "short shift" argument as Defendants clearly raised the Rule 8 violation in their papers.  Moreover, the Court may <u>sua sponte</u> raise a Rule 8 violation.  <u>Water Keeper Alliance v. United States Department of Defense</u>, 199 F.R.D. 445 (D.P.R. 2001) (Rule 8 vests the Court with the discretion to enforce the Rule with or without motion).

[4]The complaint alleges a scheme to gain control over the person and estate of Glenn E. Griggs ("Mr. Griggs") through alleged fraud on Mr. Griggs and upon the Warwick, Rhode Island Probate Court.  The complaint chronicles a contentious and long-standing family feud regarding probate matters involving Mr. Griggs, the late patriarch of the Griggs family and former owner of various businesses.  The family discord has resulted in significant Rhode Island state court litigation.  In October 2000, Plaintiffs Christine Peabody ("Christine") and Lauren Griggs ("Lauren"), daughters of Mr. Griggs, filed a petition with the Probate Court seeking appointment of a guardian for Mr. Griggs.  The Probate Court denied the petition.  Christine and Lauren unsuccessfully appealed that decision to the Rhode Island Superior Court and to the Rhode Island Supreme Court.  <u>See Griggs v. Estate of Griggs</u>, 845 A.2d 1006 (R.I. 2004).  In June 2003, Defendant Dan Griggs ("Dan"), a son of Mr. Griggs, filed a petition for limited guardianship of Mr. Griggs in the Probate Court.  The Probate Court, among other things, entered a temporary order placing Mr. Griggs in the custody of Defendants David Heal ("Heal") and Dan.  Subsequent to that order, Heal was appointed the limited permanent guardian over certain of Mr. Griggs' assets.  Courtney Griggs ("Courtney"), another daughter, and Christine and Lauren appealed the Probate Court's decision to the Rhode Island Superior Court.  <u>See</u> <u>In re Estate of Griggs</u>, Nos. KP 2005-949, KP 2005-950, KP 2005-951, 2006 WL 3720309 (R.I. Superior Court December 12, 2006) ("<u>Griggs II</u>").  The Superior Court, however, dismissed the appeal for want of jurisdiction.  <u>Id.</u> at *9.  In that decision, the Superior Court noted that the matter involved "countless hours" of depositions, "numerous hearings," "hundreds of pages of documentary exhibits," and a "voluminous record."  Christine and Courtney appealed <u>Griggs II</u> to the Rhode Island Supreme Court.  <u>In re Estate of Griggs</u>, No. 07-288-A (R.I. Oct. 25, 2007).  The Rhode Island Supreme Court dismissed the appeals based upon the appellants' failure to comply with the Rhode Island Rules of Appellate Procedure.  <u>Id.</u>  According to the Defendants, as of September 2008, there were still issues relating to <u>Griggs II</u> pending in the Probate Court.  Plaintiffs have now found their way to federal court.

[5]Plaintiffs dropped the following counts: (1) conspiracy to violate 18 U.S.C. § 2510, (2) breach of fiduciary duty, (3) invalidation of real estate deed, and (4) invalidation of trust.  Plaintiffs also combined two separate counts (declaratory and injunctive relief) in the first amended complaint into one count in the second amended complaint.

second amended complaint should not be dismissed for failure to comply with Fed. R. Civ. P.

8(a)(2).  Plaintiffs filed their response to that order and Defendants have filed their opposition.

This matter is now ripe for disposition.

## II.  Notice Pleading

The Federal Rules of Civil Procedure were originally adopted in 1938.  The Federal Rules

adopted "notice pleading," a procedural system requiring the pleader to make a  "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Notice pleading eliminated pleading complexities, confusion and gamesmanship that arose in the

previous pleading systems of common law pleading and code or fact pleading.  See generally

Mary Margaret Penrose & Dace A. Caldwell, A Short and Plain Solution to the Medical

Malpractice Crisis: Why Charles E. Clark Remains Prophetically Correct About Special Pleading

and the Big Case, 39 Ga. L. Rev. 971 (2005).  With the adoption of Fed. R. Civ. P. 8,

requirements to use "magic," technical, or cookie-cutter words to properly plead a claim

disappeared.  Id. at 1006.   "Rule 8 was intended to bury the most controversial part of code

pleading – facts demonstrating the existence of a cause of action."  Christopher M. Fairman, The

Myth of Notice Pleading, 45 Ariz. L. Rev. 987, 1007 (2003).

"Notice pleading achieves efficiency through a legal system that compensates for minimal

pleading at the outset of the suit by permitting fact gathering during the discovery phase and by

allowing for summary adjudication for claims lacking merit, determined once the discovery

process is complete."  Benjamin W. Cheesbro, A Pirate's Treasure?: Heightened Pleading

Standards For Copyright Infringement Complaints After Bell Atlantic Corp. v. Twombly, 16 J.

Intell. Prop. L. 241, 245 (2009).  The "Federal Rules only require that a complaint provide ample

4

notice to the defendant, enabling the defendant to answer" a complaint. Penrose, 39 Ga L. Rev. at 1006. Thus, the simple premise behind notice pleading is to give notice of the claim being made against an adversary and the grounds upon which a claim rests – rather than alleging in detail the specific facts upon which a claim is based. Plaintiffs in the federal system "need not lard their complaints with facts . . . ." Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009); see also Hefferman v. Bass, 467 F.3d 596 (7th Cir. 2006) (in notice pleading plaintiff is not required to plead facts or legal theories).

### III.  Fed. R. Civ. P. 8 and 9

As noted above, the general rules of pleading provide for a "short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). The short and plain statement must give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The short and plain statement must give the defendants a "meaningful opportunity to mount a defense. . . ." Conley v. Massachusetts, Civil Action No. 09-11108-NG, 2009 WL 2096207 at *4 n.5 (D. Mass. July 7, 2009) (internal quotation marks and citation omitted). "What constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 at 240-41 (3d ed. 2004). A plaintiff properly pleads a claim for relief by "briefly describing the events" supporting the claim. Sanjuan v. American Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (emphasis added).

Rule 8 requires that each averment be "simple, concise and direct." Fed. R. Civ. P. 8(d)(1). The statement of the claim should be short because "unnecessary length places an unjustified burden on the court and on the party who must respond to it." Laurence v. Wall, No. CA 07-081 ML, 2007 WL 1875794 at *1 (D.R.I. June 27, 2007); see also Wright & Miller § 1281 at 709 ("[u]nnecessary prolixity in a pleading places an unjustified burden on the district judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage"). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted to enable him to answer and prepare for trial." Laurence, 2007 WL 1875794 at *1 (emphasis added). This principle is particularly important in light of the requirement that a defendant "plead one of three alternatives in response to all of the allegations in a complaint, including attached documents or exhibits." Indiana Regional Council of Carpenters Pension Trust Fund, No. 2:06-CV-32-PPS-PRC, 2006 WL 3302642 at *2 (N.D. Ind. Nov. 9, 2006) (emphasis added); see also Calderon-Garnier v. Sanchez-Ramos, 439 F. Supp. 2d 229 (D.P.R. 2006), aff'd, 506 F.3d 22 (1st Cir. 2007); Fed. R. Civ. P. 8(b).

Fed R. Civ. P. 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representation. United States ex rel. Duxbury v. Ortho Biotech Products L.P., ___ F. 3d ___, 2009 WL 2450716 (1st Cir. 2009); see also Ahmed v. Rosenblatt, 118 F.3d 886 (1st Cir. 1997) (RICO pleadings of mail and wire fraud must satisfy Rule 9(b)). The purpose of the heightened pleading requirement of Rule 9 is to give notice to a defendant of the plaintiff's claim, to protect defendants against meritless claims, to discourage "strike suits" and to prevent the filing of suits that hope to uncover relevant information during

discovery. <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996). Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading." <u>United States ex rel. Grubbs v. Kannegant</u>, 565 F.3d 180, 186 (5th Cir. 2009); <u>see also</u> <u>Tello v. Dean Witter Reynolds, Inc.</u>, 494 F.3d 956 (11th Cir. 2007) (Rule 8(a) and 9(b) must be read in conjunction with each other); <u>United States ex rel. Williams v. Martin-Baker Aircraft Co. Ltd.</u>, 389 F.3d 1251 (D.C. Cir. 2004) (rule 9 does not abrogate rule 8); <u>Greenberg v. Howtek, Inc.</u>, 790 F. Supp. 1181, 1184 (D.N.H. 1992) (in ruling on a motion to dismiss court must "construe Rule 9(b) in conjunction with Rule 8. . . ."); <u>Bailey v. Linsco/Private Ledger Corp.</u>, 136 F.R.D. 11, 13 (D. Me. 1991) (Rule 9(b) does not completely trump Rule 8). "Rule 9 does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations. . . ." <u>Kannegant</u>, 565 F.3d at 186 (internal quotation marks and citation omitted).

### IV. The Second Amended Complaint

At the outset, Plaintiffs argue that <u>Twombly</u> changed the federal pleading landscape by expressly overruling <u>Conley v. Gibson</u>, 355 U.S. 41 (1947), which, Plaintiffs' contend, established the minimal pleading requirements under Fed. R. Civ. P. 8. Plaintiffs contend that <u>Twombly</u> "rejected the traditional pleading sufficiency standard" – <u>Conley's</u> "no set of facts standard" – and adopted a pleading standard where plaintiffs must now plead enough facts to state a claim that is plausible on its face. Plaintiffs' Memorandum Showing Cause at 5. In essence, Plaintiffs contend that <u>Twombly</u> created a "[c]onsiderable uncertainty" about pleading standards and that <u>Twombly</u> indicated the Supreme Court's intent to make "some alteration in the regime of pure notice pleading. . . ." <u>Id.</u> (internal quotation marks and citation omitted).

Although <u>Twombly</u> "retooled federal pleading standards . . . and retired the oft-quoted"

Conley motion to dismiss "no set of facts" standard, Tamayo v. Blagojevich, 526 F.3d 1074, 1082 (7th Cir. 2008), Twombly did not "supplant the basic notice-pleading standard." Tomayo, 526 F.3d at 1083. "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." Id. (internal quotation marks and citation omitted). Twombly "did not signal a switch to fact-pleading. . . ." Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC., 499 F.3d 663, 667 (7th Cir. 2007). Twombly specifically provided that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . ." Twombly, 550 U.S. at 555. The Supreme Court clarified Twombly when it stated that Rule 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (emphasis added) (internal quotation marks and citation omitted).

Plaintiffs contend that the complaint is lengthy because they had to reconcile the requirements of Rule 8 and Rule 9 and because the facts underlying the complaint involve a RICO claim. Plaintiffs stress that the second amended complaint is "substantially reduced in length" as compared to the first amended complaint. Plaintiffs' Memorandum Showing Cause at 4 (emphasis in original).

Plaintiffs' assertion that the second amended complaint is substantially reduced in length misses the mark. Length alone is not the issue. This complaint is simply not a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The second amended complaint contains 380 paragraphs over 73 pages and it specifically incorporates by reference 6 exhibits (22 additional

single-spaced pages) containing approximately 316 additional factual averments.[6]  When viewed

in its totality, the complaint is a rambling, fact-laden, disjointed "quagmire of minutiae." Kuchay

v. Vetter, No. 06 C 4501, 2007 WL 2410333 at * 1 (N.D. Ill. Aug. 20, 2007) (internal quotation

marks and citation omitted).  The complaint is replete with irrelevant, repetitive, and

incomprehensible factual averments that saddle Defendants with the unfair task of meeting their

obligation to "admit or deny the allegations asserted . . . by an opposing party." Fed. R. Civ. P.

8(b)(1)(B).  The complaint also forces this Court to parse countless irrelevant and wholly

unnecessary factual allegations to attempt to determine what Plaintiffs are alleging against each

Defendant.

To illustrate Plaintiffs' failure to comply with Rule 8, the Court points to the following

excerpts from the complaint:

Paragraph 69 of the complaint provides

> [u]pon information and belief, Carol then hired Gerstein to challenge Christine and Lauren's petition on her behalf and/or for Defendants' benefit.
> This belief is based upon testimony of Deborah Griggs given on April 2, 2004 and April 19, 2004 (made part of the probate record in In re Estate of Glenn E. Griggs, Probate Ct. Docket No. 2003-249, and copies previously filed by Plaintiffs in this action with an opposition memorandum, See Docket Nos. 81-82) [hereafter, 'Deborah's Deposition']; a 2005 written statement by her (attached hereto as 'Exhibit A' and incorporated herein by reference) [hereafter 'Deborah's 2005 Statement']; a corroborating statement by her boyfriend David Laliberte (attached hereto as 'Exhibit B,' and incorporated herein by reference); other statements by Deborah to one or more of Plaintiffs and/or Patrizia Griggs; Carol's prior pattern of hiring and firing Glenn's professionals and Gerstein's later actions in the Probate Court.

Second Amended Complaint at ¶ 69 (emphasis in original).

---

[6]This is a conservative estimate and does not take into consideration factual averments contained in exhibit E, Plaintiffs' chart.

Paragraph 69 incorporates by reference an unsworn written statement by Deborah.[7] This unsworn statement is a 3 page single-spaced document made up of approximately 21 paragraphs and approximately 57 averments.  In this statement, among other things,  Deborah alleges that

> [Carol] would come to my home and take my father out without asking me.  He would be returned very upset and disgruntled.  I objected to this but to no avail as she just had no consideration for either me or my father.

Second Amended Complaint Exhibit A at 2.

> My father, who loved his daughters and his ex-wives, and who had made me sole Power of Attorney while he still had his mental faculties, is being held captive by an evil, treacherous woman and those lawyers helping her to her evil ends.

Id. at 3.

Paragraph 69 also incorporates by reference a July 2004 affidavit from Deborah's boyfriend, David Laliberte ("Laliberte").  The Laliberte affidavit is a 4-page 21 paragraph single-spaced document that includes approximately 81 averments.  Laliberte alleges that he

> started to notice a significant decline in Glenn Griggs' mental abilities and ability to take care of himself in the last few years.  In or around December 2000, I obtained tickets to a Patriots game and invited Glenn to accompany me.  I arranged to pick him up at his house . . . in Warwick Rhode Island.  When I arrived there, Glenn invited me in insisting that I look at his Christmas tree.  When I went in the house I observed the gas stove in the kitchen with the two back burners burning in full flame on the high setting.  There was nothing on the stove and there were no pans visible.  I said to Glenn, 'You're stove is on' and he didn't really appear to show any concern or awareness.  Instead he insisted on me looking at the Christmas tree.  I turned off the burners and after that we locked up the house and went to the game.

Id. at Exhibit B at ¶ 7.

> On many occasions, I would get up in the morning and would make a pot of coffee and I would try to get Glenn to try to help himself.  Glenn would stand there looking confused not knowing what to do to prepare a cup of coffee.  On many

---

[7]The statement has a handwritten date on it of "3/2/05."

occasions, Glenn would take the sugar bowl, pour coffee in it, stir it and sit at the table and drink it. On other several occasions, I would get up and find it freezing in the house because the doors were wide open. Glenn would have his clothes spread out on the porch and have his clothing on hangers hanging in the bushes or the tree out front. When asked why the doors were open and his clothes outside, Glenn would appear confused, mutter and just say 'yeah, yeah, yeah.' We would put the clothes back in his room for him. On many occasions, he would be inappropriately dressed in partial clothing. He would even come through the house when we had company over, dressed only in a tee shirt. On another occasion he sat in the house with feces in his pants and didn't seem to be aware of it despite the fact that the smell was overwhelming. He would also wet his bed on occasion. In my opinion, I came to the conclusion that his mental state had declined dramatically since first meeting him.

Id. at ¶ 14.

Glen would also drive up the grass hill and park his car right outside the front door on my front lawn for no reason and it was clearly not a place where you would park.

Id. at ¶ 15.

Standing alone, paragraph 69 places an unfairly onerous burden upon Defendants, that is, to sort through and comprehend the allegations contained in paragraph 69, and the documents incorporated by reference, in order to draft a response that is consistent with Defendants' obligations under Fed. R. Civ. P. 8(b). Fed R. Civ. P. 8(b)(1) provides that in "responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1). Paragraph 69 forces Defendants not only to parse and review the accusations in paragraph 69 itself, but also to do the same to the factual allegations contained in the two exhibits incorporated by reference which themselves contain approximately 40 paragraphs and 138 *additional* averments. Paragraph 69 is certainly "lard[ed] . . . with facts . . . ." Burks, 555 F.3d at 594.

Plaintiffs further allege that in

> July 2003, the Warwick Probate Judge conducted an in camera interview of Glenn to assist in resolving the representation challenge and later stated that Glenn expressed that he 'preferred' Gerstein as his attorney.

> Glenn's expressed 'preference' was the result of manipulation by Carol and Gerstein (and perhaps others); and there is <u>no indication that the Warwick Probate Judge had any training or expertise to recognize any signs of undue influence or otherwise such that he could investigate whether this 'preference' was the product of anything other than 'brainwashing' activity</u>.

Second Amended Complaint at ¶ ¶ 142-143 (emphasis added).  These factual averments compel

Defendants to reply to an accusation that the probate judge did not have any training or experience

in recognizing the signs of undue influence or "brainwashing."  Id. at ¶ 143.  The averment as to

the probate judge's training or lack thereof is wholly irrelevant, adds nothing of import to the

allegations against Defendants and is but one example of Plaintiffs' fact-laden inflammatory

discourse.

Some of the allegations in the second amended complaint are based on information

received from one of Mr. Griggs' "caregivers," Sally Mello ("Mello").  Paragraph 159 of the

complaint provides that "[o]n or about January 12, 2008, Mello signed a three-page statement, the

contents of which are incorporated herein by reference and restated upon information and belief.

(Copy attached as 'Exhibit C')."  Second Amended Complaint ¶ 159.  The unsworn statement,

titled "Statement of Sally A. Mello," is a 6 page 30 paragraph single-spaced disjointed declaration

of a self-described "companion/homemaker" to Mr. Griggs.[8]  Id. at Exhibit C at 1.

The incorporation by reference of the Mello statement is particularly burdensome on

---

[8]The statement, signed by a witness, ends with the statement that Mello has "read and signed all pages of this statement and . . . received a copy.  I have not been promised anything of value for sharing this information and have done so of your [sic] own free will."  Second Amended Complaint at Exhibit C at 6.

12

Defendants and this Court.  The statement contains approximately 126 unnumbered factual

averments.  The statement begins with the averment, that Mello, a licenced practical nurse had her

license suspended as a result of being "falsely accused of taking medication . . . ."[9] Id.

Additionally, the statement includes the following sampling of factual averments:

> At the beginning I was paid in cash.  Later, I was paid from a checking account in Mr. Griggs' name and my pay was directly deposited into my account.

Id. at 1.

> Lorrie [another caretaker] did mostly grocery shopping.

Id.

> I believe Carol Griggs is quite clever.

Id. at 2.

> More recently, Hospice has been involved.  Some of the changes in the skilled nursing providers were apparently due to changes in Mr. Griggs' [health] insurance coverage.

Id.

> After . . . visits [from some of Mr. Griggs' children], Lori [another one of Mr. Griggs' caretakers] would tell me that the visits took place and say things like 'oh they came in with the stilettos and walked by me like I was dirt.'

Id. at 3.

> In December, 2007, I took a vacation and when I returned I was told by my sister Sylvia that Carol told her that David Heal wanted to take one of my nights away from me and give it to Sylvia and that David Heal was going to fire me if I didn't do a better job taking care of Mr. Griggs.  I confronted Mr. Heal and he told me that none of these statements by Carol to my sister were true.  He told me he would confront Carol the following day.  I told Mr. Heal that Carol had commented that his (Heal's) wife was 'big, fat and ugly" and eventually Mr. Heal

---

[9]Mello does not identify her accuser or accusers.  Mello also acknowledges "another false accusation" while working at West Shore Health Center in Warwick, Rhode Island.  Mello does not however, identify the type of accusation nor the accuser or accusers.

told my sisters that Carol Griggs had lied about my hours and my getting [sic] to be fired.

Id. at 4.

I also remember Carol bragging that someone in a boat outside the house in the water was able to tell me what kind of clothes I was wearing.

Id. at 5.

David Heal told me that Carol was upset about missing items from the house. I told him that I took the coffee pot because I purchased it. This was my own coffee pot and Carol has no right to the pot.

Id. at 6.

Finally, Danny told me that he was going to ask Carol where his father's gold Rolex watch was and I have been told since that Dan Griggs asked Carol about this and that Carol supposedly said that one of the caregivers 'stole it' a long time ago. I was also told that Dan has asked whether there was a police report. I have no idea whether an insurance claim was ever submitted for a lost or missing Rolex watch. I never saw a Rolex watch when I was employed.

Id.

I am fearful that due to her nature, Carol will call the Board of Licensing and falsely accuse me of acting as an LPN, when, in fact, I never did so.

Id. at 2.

The Court is struck by the amount of time it would take Defendants to parse, review and comprehend the allegations (and their relevance, if any) in the Mello statement and the costly task of constructing a meaningful and proper response in accordance with the requirements of Fed. R. Civ. P 8(b). See generally Infanti v. Scharpf, No. 06 CV 6552 (ILG), 2008 WL 2397607 at *2 (E.D. N.Y. June 10, 2008) (noting that defendants "may be understandably hard put to respond to these allegations in any meaningful way, and requiring them to answer such a pleading would fly in the face of the very purposes for which Rule 8 exists") (internal quotation marks and citation

omitted).

In paragraph 176 Plaintiffs incorporate by reference a 3 page single-spaced 20 paragraph

affidavit of David J. Aubin, Jr. ("Aubin") dated September 7, 2008.  This document contains

approximately 39 separate averments.  Among other things, Aubin states that

> While Glenn's divorce from Carol was pending (which would have been in
> 1996 or early 1997), I had lunch with Glenn and Carol wherein Glenn stated that 'I
> married her, but she never said she loved me.'  Carol responded that 'I told you
> once.'  When Glen asked 'When?," Carol could not respond.

Second Amended Complaint Exhibit D ¶ 8.

> After Glenn's divorce from Carol Griggs, I met Glenn on a Friday for lunch
> or dinner in East Greenwhich and convinced Glenn to go on another golfing trip,
> which he seemed very happy about.

Id. at ¶ 9.

> Matthew Tierney, a Griggs & Browne employee, accompanied Glenn to the
> luncheon.  My impression, based upon Tierney's conduct, was that Tierney was
> acting as some sort of 'bodyguard.'  A company underling had never accompanied
> Glenn to previous meetings of this social type, and Glenn had no reason himself to
> have Tierney there.

Id. at ¶ 10.

> I was disgusted by the fact that I was not being allowed to talk to my old
> friend and that he seemed to be under Carol Griggs' control, [sic] that I removed
> my picture from the company's 'wall of fame.'

Id. at ¶ 13 (emphasis added).  Among other things, Plaintiffs appear to attach apparent

significance to a former employee of the Griggs' companies removing his own picture from the

Griggs' business' "wall of fame."  Id.  The Court, yet again, wonders the import of, and how

Defendants would properly respond to, such a wholly irrelevant averment.

Paragraph 244 incorporates by reference Exhibit E which Plaintiffs describe as "a chart . . .

of other correspondence deposited in the U.S. Mails – or with a 'private or commercial interstate

carrier' within the meaning of 18 U.S.C. § 1341 – in furtherance of the Defendants' scheme to

defraud." Second Amended Complaint ¶ 244. The chart is a 4 page document separated into 4

columns titled "Date," "Sender," "Recipient," and "Description of Mailing." Id. at Exhibit E.

The document purports to "descri[be]" 25 mailings. Id.

 Exhibit E, however, goes beyond merely describing the mailings and includes further

factual averments that Defendants must respond to. As an example, the chart describes a letter

sent by Defendant Heal to Patrizia Griggs, in the Spring of 2000, in the following manner:

> [w]ithin days after [Mr. Griggs] promised Patrizia (as a gift) that he would install a
> new tile floor in her kitchen, this letter provided a check of $1000.00 and Heal –
> fraudulently purporting to be acting on Glenn's behalf, indicated the [sic] that tile
> floor would not be paid for.

Id. at 1. Plaintiffs also describe other letters sent by Heal as "discussing that Griggs & Browne

[would] repair Glenn's daughters' vehicles at no labor charge (contrary to prior letter)," and

"[e]xplaining that 'Courtney' Monica Griggs would not receive health [insurance] coverage from

Griggs & Browne after 12/31/00 if she was not in school (despite Glenn's intent to the contrary)."

Id. at 2.

 Once again, Defendants are left to respond to wholly extraneous factual allegations

concerning whether or not Mr. Griggs "promised" he would pay for the installation of a tile floor,

whether the Griggs and Brown company would pay for Mr. Griggs' daughters' automobile repair

costs, and the health insurance and education status of one of Mr. Griggs' daughters.

 The complaint alleges that

> [u]pon information and belief – based upon information received from
> Sally Mello regarding her personal observations – during or after Glenn was
> hospitalized in September 2007, and his death appeared imminent, Carol removed
> the hidden cameras and cables (and also destroyed a sheet of photographs which
> she had used to reinforce negative ideas about Glenn's family).

16

> The actions alleged in the preceding paragraph taken by Carol, and others
> acting in concert with her, constitute and comprise spoliation of evidence;
> accordingly an adverse inference should be drawn against Carol and/or any person
> having counseled or assisted her in taking such actions.

Id. at ¶ ¶ 287-88.  Plaintiffs' allegation of "spoliation of evidence" is clearly legal argument and

merely adds more useless information to an already overdone complaint.[10]

The second amended complaint is a chaotic pastiche of irrelevant, confusing disconnected

averments.  When read as a whole, the complaint, and its tangled web of exhibits incorporated by

reference, represent what can only be described as fact pleading run amok.  This is Plaintiffs' *third*

attempt, by very able counsel, at drafting a complaint that complies with the Federal Rules of

Civil Procedure.  "[F]ederal courts are far less charitable when one or more amended pleadings

already have been filed with no measurable increase in clarity."  Wright & Miller, § 1217 at 260-

63.  As noted, the second amended complaint is 73 pages long and contains 380 paragraphs and 6

exhibits incorporated by reference.  The five exhibits (excluding the chart) incorporate by

reference 22 additional single-spaced pages made up of approximately 96 paragraphs and 316

additional factual averments.  See generally Destifino v. Kennedy, No. CV-F-08-1269 LJO DLB,

2008 WL 4810770 (E.D. Cal. Nov. 3, 2008) (allegations in complaint which incorporate by

reference information, regardless of relevancy, violates Rule 8 and interferes with the court's

ability to administer justice); Loube v. Chrysler Corp., Civil Action No. J-81-724, 1982 WL 1924

at *5 (D. Md. June 1, 1982) ("indiscriminate use of the device of incorporation by reference only

leads to confusion").

---

[10]Suffice it to say there are many other excerpts from the second amended complaint, and the exhibits incorporated by reference, that are replete with unnecessary and wholly irrelevant factual allegations.  This Court need not discuss every irrelevant allegation in order to adequately address Plaintiffs' Rule 8 violation.  At some point it must be said that "[e]nough is enough."  Federal Election Commission v. Wisconsin Right to Life, Inc., 551 U.S. 449, 478 (2007).

"[T]he purpose of Rule 8 is that the adversary party or parties have sufficient notice to prepare their defense and the court is sufficiently informed to determine the issue[s] presented." 916 Radio v. Federal Communications Commission, No. 05-0719 FCD DAD, 2005 WL 2114187 at * 2 (E.D. Cal. August 31, 2005) (internal quotation marks and citation omitted). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Read together, rules 8(a) and 8(e)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." Wright & Miller, § 1217 at 246 (emphasis added).

Plaintiffs argue that the second amended complaint is necessarily long because of the RICO claim and Rule 9's requirements. Although Rule 9 requires Plaintiffs to plead a RICO claim with particularity, rule 9 is not a license to submit to the Court an unrestrained fact inundated opus. See Infanati, 2008 WL 2397607 at *3 (simply because Plaintiffs assert a RICO claim does not justify "a verbose complaint") (internal quotation marks and citation omitted).

The "mash of allegations [in this complaint] read more like a novel than a legal pleading and frequently digress into improper argumentative detail." Lease v. Fishel, No. 1:07-CV-0003, 2009 WL 922486 at *2 (M.D. Pa. April 3, 2009) (emphasis added); see also Fritz v. County of Kern, No. CV-F-07-377 OWW/TAG, 2009 WL 382741 at *2 (E.D. Cal. Feb. 13, 2009) (a "complaint is not a novel – background allegations and evidentiary detail are simply unnecessary and violate Rule 8(a)(2)"); In re Electronic Data Systems Corp., 305 F. Supp. 2d 658 (E.D. Tex. 2004) (rule 8 is violated when plaintiffs choose to plead excessive facts). The overdose of fact-laden surplusage in the second amended complaint places an "unjustified [and unduly prejudicial] burden" on Defendants because, in order for them to respond, they would be "forced to select relevant material from a mass of verbiage." Miranda v. United States, 105 F. App'x 280, 281 (1st

18

Cir. 2004) (quoting Wright & Miller, § 1281 at 522 (2d ed. 1990)).  As a result, Defendants are

left to tilt at windmills in order to comply with Rule 8's requirements that Defendants state their

defenses in "short and plain terms" and "admit or deny the allegations" asserted against them by

Plaintiffs.  Fed. R. Civ. P. 8(b)(1).

Additionally troubling for the Court is that in light of Fed. R. Civ. P. 8(b)(6)'s maxim that

an allegation that is not denied is admitted, responding to this complaint is akin to "crossing a

mine field with a faded [and incoherent] map as a guide."  Hatco Corp. v. W.R. Grace Co-Conn.,

849 F. Supp. 931, 938 (D.N.J. 1994).  The time and expense involved for Defendants and this

Court to decipher and parse this overly detailed and unduly cumbersome complaint is wholly

unjustified.  "Complaints which ramble, which needlessly speculate, accuse, and condemn, and

which contain circuitous diatribes far removed from the heart of the claim do not comport with

[the goals of the federal rules of civil procedure and] such complaints must be dismissed." Prezzi

v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972).

This Court is cognizant of its obligation to decide cases on the merits.  However, as noted,

this is Plaintiffs' third bite at the apple and this Court most certainly "telegraphed" to Plaintiffs

the serious Rule 8 shortcomings of the first amended complaint.  See Kuehl v. Federal Deposit

Insurance Corporation, 8 F.3d 905, 908 (1st Cir. 1993) (dismissing an amended complaint with

prejudice on Rule 8 violation where plaintiffs had been adequately warned of deficiencies

by magistrate judge).

This complaint is in no way, shape, or form a short and plain statement of the claim;

rather, it is a conglomeration of allegations made unintelligible by its volume, morass of

irrelevancies, lack of clarity and its incorporation-by-reference information overload.  The

complaint does not give Defendants fair notice of the claims and clearly will cause Defendants to expend significant and unnecessary effort to separate the wheat from the chaff in order to draft a reasoned response.

> A complaint with hundreds of averments generates tens of thousands of dollars in discovery and motions expenses.  Even answering the complaint is an expensive and unjustified burden, because Rule 8(b) requires the defendants to state their defenses to 'each' claim, and worse, in a complaint with hundreds of averments, to 'admit or deny the allegations asserted against it by an opposing party.'  One experienced in litigation knows how time consuming for the lawyer and expensive for the client it is to search out documents and personnel and get people on the phone, in order to file a good faith answer to hundreds of averments.

Hearns v. San Bernardino Police Department, 530 F.3d 1124, 1138 (9th Cir. 2008) (Kleinfeld, J., concurring in part and dissenting in part).

The Federal Rules of Civil Procedure are "administered to secure the just, speedy, and inexpensive determination of every action" brought in the federal courts.  Fed. R. Civ. P. 1. Plaintiffs have utterly disregarded the most basic principles of the notice pleading provisions of the Rules, even after having been warned by the Court and afforded an opportunity to amend their complaint.  Instead of seizing the opportunity to bring their complaint into compliance with Rule 8, Plaintiffs have seen fit to file yet another abusive pleading which has caused the Court and opposing counsel to expend precious resources to properly address its shortcomings.  The Court therefore dismisses this complaint; such dismissal is without prejudice.  Should Plaintiffs elect to file a new complaint they may do so only upon the condition that Plaintiffs first pay a counsel fee

to Defendants to make them whole for the time and effort spent in responding to the first and second amended complaints.

For the reasons outlined above, Plaintiffs second amended complaint is DISMISSED for failure to comply with Fed. R. Civ. P. 8(a)(2).

SO ORDERED

Mary M. Lisi
Chief United States District Judge
October 6 , 2009